*538
 
 Desmond, J.
 

 This suit was brought by plaintiff Nobile to have it determined that an automobile liability insurance policy issued to him by defendant Travelers Indemnity Company was in effect when, at 12:45 a.m. on October 17, 1955, plaintiff’s automotive tractor and trailer collided with another automobile, the driver of which was killed and others were injured. Effective September 16, 1955, Travelers had issued to Nobile a one-year liability policy. Plaintiff was represented in the transaction by his broker Bowkley. On October 10, 1955, only a few days after he received the policy, Nobile told broker Bowkley by telephone that he (Nobile) no longer needed the policy since his tractor and trailer were now insured through a company for which he was doing hauling and, also, because he considered the premiums to be too high. Broker Bowkley in the same telephone conversation told plaintiff that the policy could not be cancelled until plaintiff should return it to the broker’s office and until the broker should in turn forward it to defendant
 
 *539
 
 for cancellation. Nothing more definite was said in that telephone conversation about a cancellation date. Nobile did send the policy to the broker who received it by mail on either October 12th or October 13th. Nobile testified at the trial that he had sent the policy to Bowkley “to be cancelled ’ ’. At Bowkley’s direction a clerk in his office wrote in ink across the face of the policy at the top “ Cancel 10/14/55 ”. On Bowkley’s office copy of the policy his clerk wrote “ Cancelled 10/14/55 ”. Then, on October 14th (Friday), the broker mailed to Travelers the policy so marked “ Cancel 10/14/55 ” with a letter which said: “ As per the request of Mr. Nobile, I am herewith enclosing the above mentioned automobile policy for cancellation ”. That letter and the policy with the “ Cancel” legend thereon were received at defendant’s office on Monday, October 17th, at about 9:00 a.m. A few hours earlier (just after midnight that same morning) Nobile’s tractor-trailer was in the collision above described. Later on that same morning Nobile notified his broker of the accident and, still on the same day, the broker passed the information to Travelers and was told by a company representative that the policy and letter had arrived and that‘ ‘ the policy was being processed for cancellation as of October 14 ”. The company had already calculated the amount of unearned premium as of October 14th and had put on its own office record of this policy the notation: “ Cane 10/14/55 ”. On October 20th, at the insurer’s request, Bowkley sent the insurer an accident report which had been made out by plaintiff. On October 21st the insurer sent to the broker a check made out to the broker for the unearned premium computed by the company as of October 14th, which check the broker sent on to Nobile who cashed it after holding it for about a month. Meanwhile, on October 31st, Nobile himself had sent on to defendant a summons in a lawsuit brought against him for damages caused by the collision. Travelers, however, returned this summons to plaintiff with a statement saying that there was no policy coverage since the policy had been “ cancelled previous to the date of the accident”. Nobile then brought this suit for a judgment to declare whether or not the cancellation had become effectivej before the time of the accident.
 

 The trial court found for'plantiff and judgment was rendered accordingly. The Appellate Division unanimously affirmed
 
 *540
 
 without opinion and we granted leave to appeal. The trial court’s opinion, delivered orally at the close of the trial, recited the facts and held that the cancellation had not taken effect prior to the accident. The court’s reasons were two: first, that “ the notice in which the policy was returned did not state when thereafter the cancellation shall be effective ”, and, second,
 
 “
 
 That in any event, until the actual receipt of the notice and policy by the defendant, there can be no cancellation ’ ’. But in so holding the court failed to give effect to the language of- the policy itself, Condition 24 of which is in full as follows:
 

 ‘6 This policy may be canceled by the named insured by mailing to the company written notice stating when thereafter the cancelation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.
 

 ‘‘ If the named insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancelation is effected or as soon as practicable after cancelation becomes effective, but payment or tender of unearned premium is not a condition of cancelation. ’ ’
 

 Clearly that means that cancellation takes place when the insured mails to the company a written notice requesting cancellation and stating the date as of which the insured wishes the policy cancelled. It is conceded here that broker Bowldey was plaintiff’s agent for the purpose of effecting a cancellation. Plaintiff asked and directed the broker to arrange the cancellation and the broker wrote to the company requesting cancellation. True, that letter did not mention a date but the
 
 *541
 
 words written by his broker on the face of the policy
 
 ‘1
 
 Cancel 10/14/55 ” were so written within the broker’s authority and could mean nothing except a direction to the carrier that the cancellation be as of that date. Because plaintiff did not need the policy any more and thought the cost too high, he wanted it cancelled as soon as possible and his broker told the company to cancel it as of October 14th and the company cancelled it as of that date. That an accident intervened between the mailing of the policy on Friday and its receipt by the company on Monday cannot change the rights of the parties.
 

 The trial court’s theory that a cancellation request cannot be effective until notice is received by the insurer is based on
 
 Crown Point Iron Co.
 
 v.
 
 Ætna Ins. Co.
 
 (127 N. Y. 608) but that was a case where (as this court pointed out in its opinion, p. 614)
 
 “
 
 the method of terminating the insurance upon the motion of the insured is not specified, except that the insured party is to request it ”. The authority for cancellation in the
 
 Crown Point
 
 case was a statute then in effect which required every fire insurance company to “ cancel any policy of insurance hereafter issued or renewed at any time by request of the party insured”. This court, therefore, held in
 
 Crown Point
 
 that the surrender of the policies with a request for termination was not complete until the request reached the company. But in the present case the parties made their own agreement as to how and when the-policy should be cancelled. They agreed that the policy “ might be cancelled ” by the mailing to the company of a written notice stating a cancellation date. It is impossible to read such a provision as having any meaning other than that such a mailing will produce the result that cancellation is and must be accomplished on the date fixed in the notice.
 

 Some argument is made by plaintiff from the word “ thereafter ” in the clause: “ written notice stating when thereafter the cancelation shall be effective.” We think that means no more than that the policyholder may not select a cancellation date prior to the date on which he sends in the notice (see
 
 State Farm Mut. Automobile Ins. Co.
 
 v.
 
 Pederson,
 
 185 Va. 941, 952). Here, the letter and policy were put in the mail on October 14th and consistently with the meaning and purpose of the cancellation clause the notice indorsed by the broker on the policy gave
 
 *542
 
 that same date of October 14th as the date for cancellation. Cancellation under such a notice could not take effect earlier or later than October 14th.
 

 The parties agree that since this policy was written in New Jersey the laws of that State govern. However, we are not informed of anything in the law of New Jersey which changes the meaning and effect of this policy language. At least three New Jersey cases
 
 (Raiken
 
 v.
 
 Commercial Cas. Ins. Co.,
 
 135 A. 479 [N. J. Supreme Ct.];
 
 Womack
 
 v.
 
 Fenton,
 
 28 N. J. Super. 345, and
 
 McBride
 
 v.
 
 New Amsterdam Cas. Co.,
 
 12 N. J. Mis. Rep. 617) construing a cancellation provision just like the one in this policy say that mailing of the required notice of cancellation without more effects cancellation. The Virginia decision of
 
 State Farm Mut. Automobile Ins. Co.
 
 v.
 
 Pederson
 
 (185 Va. 941,
 
 supra),
 
 which involved an identical policy cancellation provision, passed on the effect of a letter from the insured to the company dated May 23, 1945, mailed on May 25th and received by the company on May 28th, requesting that the policy be terminated “as of today’The Virginia Supreme Court said that the policy was cancelled as of May 25th and that the requirement for fixing a cancellation date thereafter was satisfied by instruction to cancel “ as of today ’ \
 

 The judgment should be reversed, with costs in all courts, and the matter remitted to Special Term with instructions to enter a judgment as prayed for by defendant declaring that the policy was cancelled prior to the accident alleged in the complaint and was not in effect at the time of that accident.
 

 Chief Judge Conway and Judges Dye, Fuld, Froessel. Van Voorhis and Burke concur.
 

 Judgment reversed, with costs in all courts, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.