REBECCA GRIFFIN HAYES v. HARTFORD ACCIDENT AND INDEMNITY COMPANY.

(Filed 14 June 1968.)

**1. Insurance § 95—**

The insured in an assigned risk automobile liability policy may authorize another to act for him in exercising his right to cancel the policy.

**2. Same—**

Under a provision of an assigned risk automobile liability policy giving the insured the right to cancel the policy by mailing to the insurer written notice stating when thereafter cancellation should be effective, where the insured has constituted the loan company which financed the insurance premium his attorney-in-fact to cancel the policy, the mailing by the loan company of notice requesting "immediate cancellation" was equivalent to cancellation by the insured and effected cancellation *ipso facto* without any affirmative action being taken by the insurer, and nothing which the insurer did or failed to do thereafter affected the cancellation.

**3. Same—**

Failure of the insurer to notify the Commissioner of Motor Vehicles within 15 days after the effective date of cancellation that the policy had been terminated as formerly required by G.S. 20-310 did not affect the validity of the cancellation.

**4. Same; Insurance §§ 106, 108— Evidence held foreign to the issues and prejudicial to insurer in action upon automobile liability policy.**

In an action by a judgment creditor to compel an insurance company to pay a judgment rendered against an alleged insured under an assigned risk automobile policy, defendant contending that the policy was cancelled prior to the accident by a premium finance company acting under a power of attorney executed by the insured, and the only issues in the case being whether the insured executed the power of attorney and whether the finance company mailed to defendant prior to the accident a notice requesting immediate cancellation of the policy, evidence and jury argument that the finance company and not the insured mailed the request for cancellation, that blanks in the documents which insured signed to secure the premium financing were unfilled when the insured signed them, that the

insurer figured the unearned premium refund on a pro rata cancellation rather than a short rate method, and that the unearned premium refund was not made until after the date of the accident, are foreign to the issues and are prejudicial to defendant.

HUSKINS, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *McLean, J.*, 9 January 1967 Civil Session of GASTON, docketed and argued as Case No. 191 at the Fall Term 1967.

Action by judgment creditor to compel defendant Indemnity Company to pay a judgment recovered against an alleged insured.

The following facts are admitted or stipulated for the purpose of this trial: Under the North Carolina Assigned Risk Plan, on 27 February 1961, in consideration of a premium of $33.00, defendant issued to Mildred Jackson Sadler (Sadler) its automobile liability policy No. 20 AZ 225614 on a certain Mercury automobile. It obligated defendant until 26 February 1962 to pay on behalf of Sadler (within the policy limits) all personal injury and property damages for which she might become legally obligated as a result of the operation of the specified automobile. On 15 July 1961, the automobile was involved in a collision in which plaintiff was injured. Thereafter, in the Superior Court of Gaston County, she obtained a judgment against Sadler for $3,500.00 and the costs of the action. Execution issued on this judgment was returned unsatisfied by reason of Sadler's insolvency.

The policy in suit contained the following provision with reference to cancellation:

"18. Cancelation: This policy may be canceled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancelation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

"If the named insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancelation is effected or as soon as practicable after cancelation be-

comes effective, but payment or tender of unearned premium is not a condition of cancelation."

Defendant denies liability upon the ground that the policy had been canceled prior to 15 July 1961. It alleged that when Sadler obtained the insurance she paid only a portion of the premium to Terry Insurance Agency in cash; that the balance was payable in installments to Insurance Premium Discount Company of Statesville, N. C. (IPD); that Sadler executed and delivered to IPD a power of attorney which authorized it to cancel the insurance upon her failure to pay any installments; that Sadler defaulted and IPD canceled the insurance, the cancellation date being 30 June 1961.

The trial judge ruled that the stipulations and admissions *prima facie* established defendant's liability to plaintiff, and he directed defendant to proceed with the evidence. Defendant offered evidence tending to show: Sadler, a junior high-school teacher, applied to Terry Insurance Company (the producer of record) for a policy of liability insurance under the North Carolina Automobile Assigned Risk Plan. She paid a portion of the premium to Terry and "the rest was to be financed." Under the rules of the assigned risk plan it was required that this premium of $33.00 be paid in full in advance to the insurer. Sadler signed the papers "in connection with that arrangement." *Inter alia,* she signed and delivered to IPD the following instrument, which was introduced in evidence as defendant's Exhibit No. 1:

## "POWER OF ATTORNEY

"That certain note given in exchange for the issuance of a certain insurance policy and that certain note having been discounted by the agent issuing the said insurance with the Insurance Premium Discount Company, the insured hereby appoints Insurance Premium Discount Company his (its) attorney-in-fact to cancel and give notice of cancellation of said insurance policy, and said insurance company is hereby authorized and directed to cancel said policy and to pay Insurance Premium Discount Company the unearned or return premiums thereon without proof of default or of the amount owing to the Insurance Premium Discount Company. Said insurance company is hereby authorized to rely upon all statements made by Insurance Premium Discount Company as to the occurrence or continuance of default, the amount owing to it, and as to every other matter pertaining to this contract and said policies.

"And further the said Insurance Premium Discount Company is hereby authorized to endorse any and all checks drawn to it or to the undersigned for all earned and return premiums on the insurance policy with the understanding that any balance over and above the

balance due the Insurance Premium Discount Company will be re-funded to assured."

IPD was engaged in the business of financing insurance premiums through the assigned risk plan by purchasing note contracts from insurance agents, the producers of record. It paid the agent for the note and the agent paid the insurer in full. IPD set up an account in the name of the insured. If an installment was not paid when due, a delinquent notice was sent to the insured. Thereafter if it "was not paid within a certain period of time," under the authority of the power of attorney given it by the insured, IPD requested the insurer to cancel the policy and refund the unearned premium to it. With the refund it paid any sums due on the account and remitted the balance to the insurance agent. Terry Insurance Agency was one of its customers and it had Sadler's account.

On 9 June 1961, defendant received in its Atlanta office a letter from IPD requesting "immediate cancellation" of Sadler's policy. The reason given was that her monthly payment of $4.50, due 25 May 1961, had not been made although "due notice thereof" had been given her. (Plaintiff had made a down payment of $13.50 and financed the balance due, which, including IPD's financing charge, was $27.00.) Attached to the cancellation request was a thermofax copy of the foregoing power of attorney (Defendant's Exhibits 6 and 7).

C. E. Stapp, defendant's underwriting supervisor for assigned risk policies in North Carolina, testified: "When I received this (the request for cancellation), I canceled the policy. I received this on the 9th day of June and I canceled the policy on the 9th of June. The procedure to cancel the policy was undertaken as of June 9." Thereafter, he testified over objection that while the "cancellation procedure" was undertaken on June 9th because of "some red tape involved" in getting the refund check authorized and issued, the effective date of cancellation was 30 June 1961. The records of IPD showed that it received defendant's refund check on 18 July 1961.

Sadler testified that on 14 July 1961, the day before the accident, she received a notice from the North Carolina Department of Motor Vehicles that her insurance had ended as of 30 June 1961 and that it was unlawful for her to operate an uninsured motor vehicle. (Defendant offered no evidence as to when it notified the Commissioner that Sadler's insurance had been canceled.) Sadler also testified that she executed the power of attorney (Defendant's Exhibit No. 1).

Plaintiff offered no evidence.

Issues were submitted to the jury and answered as follows: "1. Did Mrs. Mildred Jackson Sadler execute the Power of Attorney

which has been offered in evidence as Defendant's Exhibit No. 1? ANSWER: Yes. 2. Was the policy of insurance, the subject of this action, cancelled before the 15th day of July 1961? ANSWER: No."

The court denied defendant's motion to set aside the verdict and entered judgment that plaintiff recover the sum of $3,500.00 with interest from 6 December 1962 and the costs of the action. Defendant appealed.

*Horace M. Dubose, III, for plaintiff appellee.*
*Kennedy, Covington, Lobdell & Hickman and J. Donnell Lassiter for defendant appellant.*

SHARP, J. This appeal from the fourth trial is the third time this case has been before us. See *Griffin v. Indemnity Co.*, 264 N.C. 212, 141 S.E. 2d 300; *Griffin v. Indemnity Co.*, 265 N.C. 443, 144 S.E. 2d 201.

In apt time defendant tendered to the court two prayers for special instructions. The first prayer was that the court charge the jury that if they found that Sadler executed the power of attorney (Defendant's Exhibit 1) and that IPD mailed it to defendant Indemnity Company before 15 July 1961 with a request for cancellation (Defendant's Exhibit 7), they would answer the second issue YES. In the event its first prayer should be denied, defendant's second was that the jury be peremptorily instructed to answer both the first and second issues YES.

The judge declined to give either of the requested instructions. Instead, he charged the jury that if Sadler, through IPD, requested defendant to cancel the policy "then it became the duty of the defendant to cancel the policy and the defendant had no right to ignore the direction given it by Sadler acting through her duly authorized agent, the Insurance Premium Discount Company. . . . [I]f the Insurance Discount Company wrote to the defendant insurance company to cancel the policy, then it became the duty of the defendant company to cancel the policy and to return the premium." The judge's final mandate was that if, on or about 9 June 1961, IPD requested defendant to cancel the policy and return the premium and at that time defendant "put in motion the cancellation of the policy and did cancel it on or about the 30th day of June, then it would be your duty to answer this second issue YES; otherwise, you will answer it No. . . ."

*Inter alia,* defendant assigns as error (1) the foregoing portions of the charge; (2) the failure of the judge to give the requested special instruction; and (3) his failure to charge the jury that if defendant received the cancellation notice from IPD on or about 9

June 1961, "the policy was canceled upon the receipt of the request for cancellation without further action by the defendant," and it would be their duty to answer the second issue YES.

The assignments of error to the charge present these questions: (1) Was the policy canceled by the insured Sadler or by defendant insurer? (2) If canceled by the insured, was the policy canceled *ipso facto* when the request was mailed, or was some additional action by defendant insurer required to effect cancellation?

Plaintiff's contention is that defendant did not cancel the policy on June 9th, the day on which the request was received, but delayed cancellation until June 30th; that, because of the delay, the cancellation was by defendant and not by the insured Sadler; that defendant failed to give the 10-day notice of cancellation required by § 18 of the policy or the 15-day notice which G.S. 20-310 required when the insurer cancels, and for that reason the policy remained in full force and effect.

We consider first the policy requirements. Section 18 of the policy gave insured the absolute right to cancel at any time by either of two methods: (1) by surrendering the policy to the company or any of its authorized agents, or (2) by mailing to the company written notice stating when thereafter the cancellation shall be effective. Furthermore, Sadler could exercise that right personally or she could authorize another to act for her. *Griffin v. Indemnity Co.*, 264 N.C. 212, 141 S.E. 2d 300; *Daniels v. Insurance Co.*, 258 N.C. 660, 129 S.E. 2d 314. By a duly executed power of attorney she gave IPD blanket authority to cancel the policy. It exercised that authority on 8 June 1961 by method (2) when it mailed defendant a request for "immediate cancellation." Thereafter, on an undisclosed date, defendant notified the Department of Motor Vehicles that the policy had been canceled as of 30 June 1961.

The cancellation was instigated by Sadler's agent, IPD, and not by defendant, which had received the first annual premium in full as required by Rules 11 and 14 of the North Carolina Automobile Assigned Risk Plan. Defendant had given no notice and taken no steps leading to cancellation prior to receiving the notice from IPD. Absent any additional requirements in the Vehicle Financial Responsibility Act of 1957, the mailing of the notice requesting *immediate* cancellation of the policy effected cancellation without any affirmative action whatever being taken by defendant Indemnity Company. The rule is stated in 29 Am. Jur. *Insurance* § 401 (1959):

"Where an insurance policy provides that the policy shall be canceled at any time on the request of the insured . . . and that if the policy is canceled, the unearned portion of the premium shall be

returned on surrender of the policy, the company retaining the customary short rate, a written request for cancellation by the insured effects a cancellation at once and without any action by the insurer even though the policy is not surrendered and the unearned portion of the premium is not returned, since these are not conditions precedent to a cancellation by the insured. After cancellation and upon demand by the policyholder, the insurance company is liable to pay to him the unearned premium. However, whether or not such unearned premium is paid in no way delays or affects the cancellation of the policy." See Annot., Construction, application, and effect of clause that liability insurance policy may be canceled by insured by mailing to insurer written notice stating when thereafter such cancellation shall be effective, 8 A.L.R. 2d 203 (1949).

In *Nobile v. Travelers Indemnity Co of Hartford, Conn.*, 4 N.Y. 2d 536, 176 N.Y.S. 2d 585, 152 N.E. 2d 33 (Ct. App.), on 16 September 1955, the defendant issued to the plaintiff an automobile liability policy. On 10 October he requested his broker to cancel the policy, which he surrendered on October 12th or 13th. On the 14th, a clerk stamped across the face of the policy "Cancel 10/14/55" and mailed it to the defendant. The defendant received the policy at 9:00 a.m. on 17 October. At 12:45 a.m. on the same day, the plaintiff had been involved in a collision. He brought suit to determine whether the policy was in effect at the time of the accident. The policy provision with reference to cancellation was identical with Section 18 of the policy in suit. In holding that the policy was canceled on 14 October, Desmond, Judge, speaking for the court, said:

"[T]he parties . . . agreed that the policy 'might be cancelled' by the mailing to the company of a written notice stating a cancellation date. It is impossible to read such a provision as having any meaning other than that such a mailing will produce the result that cancellation is and must be accomplished on the date fixed in the notice. . . .

"We think that [the word *hereafter*] means no more than that the policyholder may not select a cancellation date prior to the date on which he sends in the notice (see *State Farm Mut. Automobile Ins. Co. v. Pederson*, 185 Va. 941, 952, 41 S.E. 2d 64). Here, the letter and policy were put in the mail on October 14th and consistently with the meaning and purpose of the cancellation clause the notice indorsed by the broker on the policy gave that same date of October 14th as the date for cancellation. Cancellation under such a notice could not take effect earlier or later than October 14th." *Id.* at 541-42, 176 N.Y.S. 2d at 588-89, 152 N.E. 2d at 35.

The Virginia decision of *State Farm Mut. Automobile Ins. Co. v. Pederson,* 185 Va. 941, 41 S.E. 2d 64 (referred to in *Nobile, supra*) also involved a cancellation provision identical with the one we consider here. By a letter, dated 23 May 1945 and mailed 25 May 1945, the insured requested the insurance company to cancel his policy "as of today." The company received the letter on 28 May and acknowledged it on 29 May. On 4 June the company's local agent mailed the insured a form labeled "Policyholder's Request For Cancellation," and asked that he sign it. Therein it was stated that the policy had been canceled "effective May 25, 1945." On 5 June 1945, insured was involved in an automobile accident in which the plaintiff was injured. Thereafter she recovered judgment against him. The plaintiff contended (1) that the policy had not been canceled because the notice to the company "did not fix a date 'thereafter' when the cancelation was to become effective, but undertook to make the cancelation effective at once"; (2) that the company did not treat the letter as having terminated the policy; and (3) that return of the unearned premium was a condition of cancellation and the amount paid would have kept the policy in force on the day of the accident.

The Virginia court found no merit in any of these contentions. As to the first it said: "[T]he notice, dated May 23, 1945, requesting that the policy be canceled effective 'as of today,' was sufficient to cancel the policy on the date that it was received by the Insurance Company, namely, May 28, if not on May 25, the date the notice was mailed. *Either of these dates is after the date of the notice. Id.* at 952, 41 S.E. 2d at 68. (Emphasis added.)

"The purpose of the provision in the policy requiring that the notice from the insured shall state 'when *thereafter* such cancelation shall be effective,' is, we think, merely to forestall a retroactive notice. That purpose is, of course, accomplished here when the notice, dated May 23, is treated as effective on May 25, two days later." *Id.* at 952, 41 S.E. 2d at 68. *Accord, State Farm Mut. Auto Ins. Co. v. Miller,* 194 Va. 589, 74 S.E. 2d 145.

As to the plaintiff's second contention in *Pederson, supra,* the court pointed out that insured had in no way "relied on or been misled" by any acts of defendant which indicated that the policy was in force. As to the third contention, the court held that the insured's request for cancellation was not conditioned upon the return of the premium. His request that the unearned premium be returned did not indicate that cancellation was to be ineffective until he had received the refund.

In *Hardware Mutual Casualty Company v. Beals,* 21 Ill. App.

2d 477, 158 N.E. 2d 778 (a case in which a request for cancellation was held ineffectual because made by an unauthorized person), the Appellate Court of Illinois said: "[W]hen cancellation is made by the insured the company may sit back and do nothing. It need not go through the physical motion of actually cancelling the policy; it need not reply; it need not acknowledge receipt of the notice; it need not even return the unearned premium except upon demand since all contractual relations are at an end, with only a debtor-creditor relation existing for return of the unearned premium." *Id.* at 485, 158 N.E. 2d at 782.

In *Johnson v. Insurance Co.,* 174 N.C. 201, 93 S.E. 735 (tornado insurance) and *Manufacturing Co. v. Assurance Co.,* 161 N.C. 88, 76 S.E. 865 (fire insurance), each policy provided for cancellation at the request of the insured. In each case, after the plaintiff-insured had requested cancellation, he suffered a loss and sued on the policy. In both cases, this Court held that the request operated as a cancellation the instant it was made — even if the insurer absolutely refused to cancel. In *Johnson, supra* at 203, 93 S.E. at 736, it is said: "And if this request was made, there would be no significance in the fact that after the loss occurred, the company, in making a remittance for the unearned premium, retained an amount sufficient, at the annual rate, to have carried the policy beyond the date of the loss. . . . Even if the amount retained by the company was too much, this would only be a matter of adjustment between them as the sum actually due and would have no effect on the continued existence of the policy." *Accord, Farmers' Store v. Delaware Farmers' Mut. Fire Ins. Co.,* 240 Minn. 170, 59 N.W. 2d 889; *Gately-Haire Co. v. Niagara Fire Ins. Co.,* 221 N.Y. 162, 116 N.E. 1015.

In the first appeal in this case, Rodman, J., speaking for the Court, made it quite clear that, by the express provisions of the policy, the validity of cancellation was not dependent upon the return of the unearned portion of the premium and that defendant, when directed to cancel, was under no obligation to ascertain what sum, if any, Sadler owed IPD. The opinion, although not spelling it out in identical terms, laid down the rule quoted above from 29 Am. Jur. *Insurance* § 401 (1959) and followed the rationale of the New York and Virginia cases. *Griffin v. Indemnity Co.,* 264 N.C. 212, 141 S.E. 2d 300.

Clearly, the policy in suit was canceled by the insured. Therefore, defendant was under no obligation to notify Sadler that it had acted as she directed and canceled the policy. *Griffin v. Indemnity Co., supra; Daniels v. Insurance Co.,* 258 N.C. 660, 129 S.E. 2d 314; *Underwood v. Liability Co.,* 258 N.C. 211, 128 S.E. 2d 577. Neither

the 10-day-notice requirement of the policy nor the 15-day-notice requirement of G.S. 20-310, applicable when the insurer cancels, were apposite.

We hold that cancellation of the policy was accomplished when IPD mailed defendant the request for "immediate cancellation." Nothing further was required of either the insured or the insurer, and nothing which the insurer did or failed to do thereafter affected the cancellation. Thus the policy was canceled on 8 June 1961, and not on 30 June 1961, despite the fact that the notice, which Sadler received from the Department of Motor Vehicles on 14 July 1961 (the day before the accident) stated that it had been canceled on the later date. Since the evidence does not disclose the actual time, we may assume that defendant failed to notify the Commissioner within 15 days after 8 June 1961 (as then required by G.S. 20-310) that the policy had been canceled. Such notice, however, was not a condition of cancellation as plaintiff contends. In *Nixon v. Insurance Co.*, 258 N.C. 41, 127 S.E. 2d 892, the insured canceled the policy on 26 April 1960 and insurer mailed notice to the Commissioner on 16 May 1960, two days after an accident in which the plaintiff was injured. She recovered judgment against insured and sued on the policy. In affirming the judgment of nonsuit this Court said: "Cancellation of a policy is not conditioned upon the statutory notice to the Commissioner." *Id.* at 44, 127 S.E. 2d at 894. See also *Levinson v. Indemnity Co.*, 258 N.C. 672, 674, 129 S.E. 2d 297, 300.

From the foregoing, it follows that each of defendant's assignments of error to the charge must be sustained. Defendant was entitled to its prayers for special instructions, and the court erred in failing to give them as requested. The specific portion of the charge to which exception is taken implied that, in order to effect cancellation, some affirmative or formal action was required of defendant after it received IPD's notice to cancel immediately. It was therefore confusing and prejudicial.

As pointed out in the second appeal of this case, "[C]ancellation of the policy is an affirmative defense and the burden is upon the defendant to prove a valid cancellation effective before the liability of the insured arose." *Griffin v. Indemnity Co.*, 265 N.C. 443, 445, 144 S.E. 2d 201, 203. Thus, the judge may never nonsuit plaintiff so long as IPD's request for cancellation of the policy does not appear from her evidence. We point out, however, that the only issues in this case are (1) whether Sadler executed the power of attorney (Defendant's Exhibit 1), and (2) if so, whether IPD mailed it to defendant prior to 15 July 1961. Upon the evidence presented at each of the three trials which this Court has reviewed, defendant will always be entitled to have the jury instructed that, if they find

the facts to be as all the evidence tends to show, they will answer both issues YES. In the event the jury should disregard this instruction it would seem appropriate for the judge to set the verdict aside.

In the trial below, over defendant's objection, evidence was admitted which tended to show (1) that IPD — not Sadler herself — mailed the request that defendant cancel the policy; (2) that blanks in the information sheet, note, and note discount contract — documents which Sadler signed to secure premium financing from IPD — were unfilled at the time she signed them; (3) that defendant figured the unearned premium refund on "a pro rata cancellation" rather than a "short rate method"; and (4) that the refund was not made until 18 July 1961. All of this evidence was foreign to the issues and prejudicial to defendant. The jury speech, which plaintiff's counsel based upon this incompetent testimony, also patently prejudiced the defense. Defendant's assignments of error, based upon exceptions to both the evidence and the argument, are also sustained.

We sympathize with the plight of plaintiff, who has been injured by an uninsured motorist; nevertheless, the fault is not defendant's. The law permitted Sadler to borrow the money to pay the premium on the insurance which it required her to have before she could lawfully operate the vehicle upon the highway. The law also allowed her, in effect, to mortgage the required insurance by authorizing IPD (1) to cancel the policy if, at any time, she failed to pay an installment on the premium loan, (2) to collect the unearned premium from the insurance company, and (3) to apply the refund to the satisfaction of her debt. *Daniels v. Insurance Co., supra.* Furthermore, IPD was not required to notify Sadler when it requested the cancellation of her policy. However, the present law, G.S. 58-60, requires an insurance premium finance company to give an insured not less than 10 days' written notice of its intent to cancel his insurance contract unless the defaulted installment is received. *Grant v. Insurance Co.,* 1 N.C. App. 76, 159 S.E. 2d 368, *cert. denied* 30 April 1968, 273 N.C. 657. We also note that when an insured cancels a policy, G.S. 20-309(e) now requires an insurer to give the Department immediate notice of such cancellation, but thereafter an uninsured automobile owner does not forfeit his registration for 15 days after the Department notifies him of the cancellation.

For the errors indicated, the fifth trial of this case must be ordered.

New trial.

HUSKINS, J., took no part in the decision or consideration of this case.