RAYMOND J. DAVIS, PLAINTIFF, v. ROBERT J. RODDIE, DEFENDANT AND THIRD PARTY PLAINTIFF-RESPONDENT, v. NEW JERSEY MANUFACTURERS INSURANCE COMPANY, THIRD PARTY DEFENDANT-APPELLANT AND FOURTH PARTY PLAINTIFF, v. BROADWAY BANK AND TRUST COMPANY, FOURTH PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued February 17, 1971—Decided March 1, 1971.

Before Judges KILKENNY, HALPERN and LANE.

*Mr. Richard D. Catenacci* argued the cause for Third Party defendant-appellant, New Jersey Manufacturers Insurance Company, (*Messrs. Hughes, McElroy, Connell, Foley & Geiser,* attorneys; *Mr. Catenacci* of counsel and on the brief).

*Mr. Jonathan Kohn* argued the cause for defendant and Third Party plaintiff-respondent, Robert J. Roddie, (*Mr. James D. Butler,* attorney; *Mr. Kohn* of counsel and on the brief).

The opinion of the court was delivered by

HALPERN, J. A. D. For convenience, the defendant and third-party plaintiff-respondent will be referred to as "Roddie"; the third-party defendant-appellant as "N. J. M."; and the fourth-party defendant as "bank." N. J. M. appeals from a judgment against it in favor of Roddie on the third-party complaint. The facts are as follows:

Roddie, an assigned risk under the Motor Vehicle Security-Responsibility Law (*N. J. S. A.* 39:6–23 *et seq.*), obtained auto liability insurance from N. J. M. through Clarke, an insurance broker. This enabled him to own and drive a car in New Jersey. He borrowed $251.67 from the bank to pay the premium on the policy. Simultaneously with the issuance of the policy on January 27, 1967, Roddie executed a note and financing agreement with the bank which is recognized and referred to in the policy issued to Roddie by N. J. M. as will later appear.

The note agreement required Roddie to make eight monthly payments to the bank of $23.86 commencing on February 27, 1967. The note agreement authorized the bank to pay N. J. M. the full premium due, and in the event of Roddie's default it provided:

4. Default by the undersigned insured in the payment of any installment hereunder when due shall render the whole unpaid balance of principal hereof immediately due and payable, without notice, *and if default continues for ten (10) days thereafter, shall constitute an election by the undersigned insured to cancel said policy.* It is agreed that, in such event, the undersigned insured will promptly return the policy and the payee is hereby authorized to notify the insurance company of such cancellation, and to collect and receive from such company all returned or unearned premium for application as above mentioned. It is also agreed that the undersigned insured will pay all cancellation fees.

5. To effectuate the foregoing, said insurance company is hereby authorized and directed: * * *

(b) To pay any unearned premium to said payee which may become due on account of cancellation of said policy at any time by the undersigned insured, the payee or the insurance company; * * *.

The relevant portions of the insurance policy provided:

14. Cancelation: This policy may be canceled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancelation shall be effective. This policy may be canceled by the company by mailing to the named Insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancelation is effected or as soon as practicable after cancelation becomes effective, but payment or tender of unearned premium is not a condition of cancelation.

The endorsements on the policy, which were added because of the loan by the bank, provided:

It is understood and agreed that:

Item 1. All or part of the premium for this policy has been financed by the Policyholder or Named Insured (hereinafter called the Policyholder) through Broadway Bank & Trust Co. 51 Broadway Paterson, New Jersey (hereinafter called the Lender), under conditions agreed to as between the Policyholder and said Lender.

Item 2. The Policyholder has given the Lender the authority to notify the Company to request cancellation of this policy for his failure to pay any premium loan installment, and specifically directs the Company to receive and honor any such request as though in fact made by the Policyholder to the Company.

Item 3. If the Company cancels the policy it will be with advance notice to the Policyholder and the Lender.

Item 4. In recognition of the agreement between the Policyholder and the Lender, the Company agrees that it will, upon receipt by

it of a request from the Lender, cancel this policy in accordance with the policy cancellation clause and return all unearned portion of the premium to the Lender.

When Roddie failed to make his required monthly payment on March 27, 1967, the bank on April 3, 1967 mailed him a notice of default which stated in large print, among other things, "MAIL YOUR PAYMENT TODAY TO AVOID CANCELLATION OF YOUR INSURANCE." A copy of the notice was sent to Clarke. Roddie was still in default on April 11, 1967 when the bank wrote and directed N. J. M. to cancel the policy and remit to it the unearned premium. Copies of the letter were sent to Roddie and Clarke. (Although Roddie denied receiving it, his copy of the notice was received in evidence).

On April 13, 1967 N. J. M. received the bank's direction to cancel Roddie's policy, and on the same day cancelled it in accordance with its undertaking in the policy. On April 26, 1967, N. J. M. notified the Director of Motor Vehicles of the cancellation pursuant to *N. J. S. A.* 39:6–40, and advised him the cancellation was effective as of May 8, 1967. The Director advised Roddie that his driving and registration privileges were suspended, effective May 11, 1967, because of his failure to comply with *N. J. S. A.* 39:6–23, *et seq.* The Director ordered Roddie to surrender his driver's license and car registration certificate immediately.

On May 23, 1967 Roddie was involved in an auto accident with plaintiff Davis, which is the subject matter of the underlying suit in this case. At the time of the accident defendant was driving without a valid license.

Roddie, by way of third-party complaint against N. J. M., sought indemnification from N. J. M. for any money judgment Davis might obtain against him, as well as his costs for defending the suit. N. J. M., by way of fourth-party complaint against the bank, sought indemnification from the bank in the event it was held liable to Roddie.

The court tried the issues between Roddie, N. J. M. and the bank before a jury, prior to trying the claim by Davis

against Roddie. At the end of all the proofs, the court determined as a matter of law that the policy had been improperly cancelled, and that N. J. M. was required to defend the suit by Davis against Roddie, and pay any resulting money judgment. No disposition was made of N. J. M.'s claim against the bank. This appeal is by N. J. M. from the judgment entered on the court's determination. Since no objection was raised to N. J. M.'s taking a direct appeal, rather than applying for leave to appeal, we will decide the issues raised since they have been fully briefed and argued.

The thrust of N. J. M.'s contention on this appeal is that it properly cancelled Roddie's policy when directed to do so by the bank prior to the date of the accident. In effect, the cancellation was by Roddie through his authorized agent. We agree.

We are mindful that in considering defenses to claims on insurance contracts we should protect "the ordinary policyholder untutored in the intricacies of insurance * * * and that it is likewise [the insurance company's] obligation to make policy provisions, especially those relating to coverage, exclusions and vital conditions, plain, clear and prominent to the layman." *Harr v. Allstate Insurance Co.*, 54 *N. J.* 287, 303–304 (1969). We are also mindful that we should construe all contracts "in accord with justice and common sense and the probable intention of the parties. It is to be interpreted as a business transaction entered into by practical men to accomplish an honest and straight-forward end. * * *[A] contract must be construed as a whole and the intention of the parties is to be collected from the entire instrument and not from detached portions." *Krosnowski v. Krosnowski*, 22 *N. J.* 376, 387 (1956). These same principles apply to insurance contracts. 1 *Couch on Insurance* 2d, § 15:17 at 671.

Thus viewed, we find that the provisions in the note agreement and insurance policy, hereinbefore set forth, are crystal clear that if Roddie defaulted in his payments to the Bank, it could, as his agent, cancel the policy and recoup the un-

earned premiums to apply on the loan. By the terms of the insurance policy N. J. M. was duty bound to cancel the policy when requested by the bank.

As best we can ascertain from the poor transcript furnished us, the trial judge found for Roddie on the basis that "no proper cancellation has been proven in this case," and that public policy required prior notice by N. J. M. to Roddie of the cancellation to make it effectual because he was an assigned risk. Roddie points to the insurance policy which provides that the bank is given the authority by Roddie only "to notify the company [N. J. M.] to request cancellation of this policy for his failure to pay any premium loan installment." He argues this did not give the bank the right to cancel, but merely authorized it to request cancellation. We find that such interpretation of the word "request" is too narrow and strained in light of the obvious intent of the parties, as expresed in the note agreement and insurance policy, that it was an absolute right to demand or order a cancellation.

Assigned risk policies which are paid for under note agreements similar to the one in the instant case are not against public policy and are enforceable. See *Sweers v. Malloy*, 28 A. D. 2d 955, 281 *N. Y. S.* 2d 693 (App. Div. 1967); *Hayes v. Hartford Accident and Indemnity Co.*, 274 *N. C.* 73, 161 *S. E.* 2d 552 (Sup. Ct. 1968); *Daniels v. Nationwide Mutual Insurance Co.*, 258 *N. C.* 660, 129 *S. E.* 2d 314 (Sup. Ct. 1963); *Chamberlain v. Employers' Liability Assur. Corp.*, 289 *Mass.* 412, 194 *N. E.* 310 (Sup. Jud. Ct. 1935). In fact, such agreements are beneficial to persons like Roddie, who otherwise would be deprived of the privilege to operate a car, as well as to the public, who are protected against Roddie's negligence to the extent of the insurance in force during the life of the policy.

Roddie further contends that item 3 of the endorsement set forth above required N. J. M. to give Roddie advance notice of any cancellation, which N. J. M. failed to do. Here again, in reading Items 1, 2, 3 and 4 of the en-

dorsement it is clear that item 3 applies only if N. J. M. cancels the policy — here, it was Roddie, through his authorized agent, the bank, that cancelled the policy, and N. J. M. had no alternative but to comply with the provisions in items 2 and 4 of the endorsement.

It is significant that the Legislature enacted *N. J. S. A.* 17:16D-13, effective July 30, 1968. While the statute is inapplicable to the instant case, it makes specific provision for cancellation when a premium finance agreement is in effect, and the power is given the lender to cancel for nonpayment. The procedure outlined in the statute for cancellation on nonpayment by the lender is substantially what the bank and N. J. M. did in the instant case. It is also significant that the Legislature in authorizing the lender to cancel for nonpayment, provided that "the premium finance company may thereafter *request* in the name of the insured, cancellation of such insurance contract * * *." (Emphasis added)

In summary, since the note agreement and the insurance policy permitted cancellation by N. J. M. at the bank's direction, and since the requisite notices were given by the bank to Roddie and by N. J. M. to the Director of Motor Vehicles, and the policy was cancelled before the accident in question, Roddie has no claim against N. J. M.

The judgment entered below is reversed, and a judgment of dismissal entered in favor of N. J. M. and against Roddie. It follows that the fourth-party complaint is moot and is hereby dismissed.