FIREMAN'S FUND INSURANCE COMPANY, A CORPORATION v. DR. DENNIS L.
    JACKSON, DENNIS L. JACKSON, JR., (A MINOR), NATHANIEL MOORE,
    ARCHIE GORE, WILLIAM F. JACKSON (ADMINISTRATOR OF THE ESTATE OF
    FLOYD JACKSON, AND NATIONWIDE MUTUAL INSURANCE COMPANY
    (A CORPORATION)

No. 7710SC773

(Filed 1 August 1978)

1. **Insurance § 94— automobile liability policy—cancellation by lost policy
cancellation release form**

   An automobile liability insurance policy was cancelled by surrender of the
policy on 8 April 1975, not by notice of cancellation, where the insured in-
structed his receptionist on 8 April 1975 to cancel the policy, the receptionist
notified an insurance agent by telephone that insured wished to cancel the
policy, the receptionist and the insured were advised by the agent that
cancellation should be effected by surrender of the policy, the insured author-
ized the insurance agent to sign his name on a lost policy cancellation release
form at that time, and the form was signed for the insured on 8 April 1975
pursuant to his instruction and was mailed to the insurer on that date.

2. **Insurance § 94— automobile liability policy—lost policy cancellation release
form**

   Although an automobile liability insurance policy made no specific provi-
sion for the use of a lost policy cancellation release form in lieu of surrender of
the actual policy for cancellation, a policy was effectively cancelled by use of
the form where the parties mutually consented to cancellation by use of the
form in lieu of actual surrender of the policy.

3. **Insurance § 94— automobile policy—lost policy cancellation release
form—notation not part of agreement**

   The phrase "Cancel flat effective 3-30-75" which was typed at the bottom
of a lost policy cancellation release form beneath the signature of insured and
the insurer's agent did not render the form ambiguous as to whether cancella-
tion was intended to become effective on the date the form was signed, 8 April
1975, or on the original date the policy was effective, 30 March 1975, where
the typed notation was merely an interoffice notation from one agent of the in-
surer to another and was not a part of the agreement of the parties.

APPEAL by plaintiff from *Clark, Judge.* Judgment entered 9
June 1977 in Superior Court, WAKE County. Heard in the Court
of Appeals 20 June 1978.

The plaintiff appellant, Fireman's Fund Insurance Company,
instituted this action for a declaratory judgment by which it
sought a judicial determination of the rights and liabilities of the
parties herein arising out of a policy of automobile liability in-

surance issued by the plaintiff to the defendant, Dr. Dennis L. Jackson. The action was tried by the trial court without a jury. Based upon competent evidence adduced at trial, the trial court found the following facts:

During the first half of 1974, the defendant, Dr. Dennis L. Jackson, had placed much of his personal and business insurance with the S. W. Tomlinson Insurance Agency [hereinafter referred to as the "Agency"], in Fayetteville, North Carolina. The Agency had authority to bind the plaintiff, Fireman's Fund Insurance Company [hereinafter referred to as the "Company"] to policies of automobile liability insurance.

Prior to 30 March 1975, the Company issued a policy of automobile liability insurance to the defendant renewing his existing automobile liability insurance with the Company. The renewal policy provided for coverage of named vehicles for the period from 30 March 1975 through 30 March 1976 inclusive. It was sold through and issued by the Agency as authorized agent of the plaintiff Company. The policy and an attached premium statement were delivered by mail to the defendant and received by him sometime in January of 1975.

The defendant, at all material times, also carried other insurance policies with the Company issued by the Agency. The Agency had previously engaged in a course of dealing with the defendant which included the extension of credit for payment of the premiums on the policies he carried with the Company through the Agency. After billing the premiums for policies to the defendant, the Agency had in such instances carried them on their books as credit items.

During the months of March and April of 1975, Lois Proctor was employed as a receptionist by the Central Animal Hospital, a corporation in which the defendant owned approximately 90 percent of the stock and of which he was president. The defendant's principal contacts with the Agency had been by having Mrs. Proctor contact the Agency on his behalf.

The defendant instructed Mrs. Proctor on 7 March 1975 to call the Agency and request cancellation of an insurance policy on a motorcycle. She called the Agency at that time and spoke with Patricia McDonald, an employee of the Agency, and requested

that the policy covering the motorcycle be canceled or not renewed. Acting pursuant to the instructions of the defendant as communicated by Mrs. Proctor, Mrs. McDonald did not issue a renewal policy on the motorcycle, and no further billings were sent to the defendant relative to this policy.

During the same conversation on 7 March 1975, Mrs. Proctor advised Mrs. McDonald that the defendant wished to cancel or not renew a fire insurance policy. Mrs. McDonald prepared and sent to the defendant by that day's mail a Lost Policy Cancellation Release form for the fire insurance policy.

The defendant received a statement by mail from the Agency on 8 April 1975 which he took to Mrs. Proctor on the same date. He inquired as to whether she had previously canceled the insurance policy covering the motorcycle, and she advised him that she had. The defendant then instructed her to call again and cancel the motorcycle insurance.

Mrs. Proctor called the Agency on 8 April 1975 and again spoke with Mrs. McDonald. During this conversation, Mrs. Proctor again spoke with the defendant who instrtucted her to direct the Agency to cancel all of his personal insurance, including the policy covering the motorcycle and the policies covering his Dodge automobile and other automobiles. Mrs. Proctor immediately instructed the Agency to cancel all of the defendant's insurance, including the policy in question, as it came due. Mrs. McDonald then advised Mrs. Proctor that it would be necessary for the defendant to return the automobile liability insurance policy to the Agency in order to effect cancellation. Mrs. Proctor advised the defendant of this and was informed by him that he did not have the policy with him. He then authorized Mrs. Proctor to authorize the Agency to sign his name to a Lost Policy Cancellation Release form for the purpose of effecting cancellation of the policies. Before ending the conversation with Mrs. McDonald, Mrs. Proctor communicated this authorization to Mrs. McDonald of the Agency. The statement from the Agency, which the defendant handed to Mrs. Proctor before her call to the Agency on 8 April 1975, contained the policy number of the automobile insurance policy, which number was communicated by Mrs. Proctor to Mrs. McDonald during their conversation. After her conversation with Mrs. McDonald on 8 April 1975, Mrs. Proctor told the

defendant that she had canceled the insurance on his personal automobiles and the defendant acknowledged this information.

A Lost Policy Cancellation Release form was executed in the defendant's name by an employee of the Agency on 8 April 1975, pursuant to the defendant's authorization as conveyed by Mrs. Proctor. On that date, the form was mailed to the home office of the plaintiff Company in Greensboro, North Carolina.

On the morning of 10 April 1975, an underwriter employed by the plaintiff in its home office found the form together with pertinent attached papers on his desk and stamped it with his name and the date of 10 April 1975. In the normal course of the plaintiff Company's business, clerical employees take such forms from the mail at the home office and match them up with appropriate documents from the plaintiff's file. They then carry them to the desk of an underwriter who receives them on his desk the day following the receipt of the forms by mail.

The accident giving rise to this litigation occurred on 10 April 1975 in Brunswick County, North Carolina. It involved a 1974 Dodge automobile driven by the defendant's son and listed as an insured vehicle in the Company's automobile liability insurance policy in question.

The defendant never paid any sum by way of policy premium for the renewal policy of automobile liability insurance in question. He wrote a check for the policy premium on 12 April 1975, however, and mailed it to the Agency on 13 April 1975. This check was later received by the Agency but not cashed.

After making the above findings of facts and others, as well as conclusions of law which are discussed hereinafter, the trial court entered a declaratory judgment finding and declaring that the plaintiff was an insurer of the defendant and his son against liability arising out of the operation of the automobile in question on 10 April 1975 at the time of the accident. From this judgment the plaintiff appealed.

Other pertinent facts are set forth hereinafter.

*Teague, Johnson, Patterson, Dilthey & Clay, by Robert M. Clay and Dan M. Hartzog, for plaintiff appellant.*

*Blackwell, Thompson, Johnson & Thompson, by E. Lynn Johnson, for defendant appellees Dr. Dennis L. Jackson and Dennis L. Jackson, Jr.*

*McRae, McRae & Perry, by James E. McRae, for defendant appellee Dr. Dennis L. Jackson.*

*Butler, High & Baer, by Keith Jarvis, for defendant appellee William F. Jackson, Administrator of the Estate of Floyd Jackson.*

*Smith, Anderson, Blount & Mitchell, by Samuel G. Thompson, for defendant appellees Nationwide Mutual Insurance Company, Nathaniel Moore and Archie Gore.*

MITCHELL, Judge.

This action was tried by the trial court without a jury, and its findings of fact previously set forth herein were fully supported by competent evidence. Therefore, they are conclusive and will not be disturbed upon appeal. 12 Strong, N.C. Index 3d, Trial, § 58.3, p. 493.

[1] The plaintiff assigns as error the conclusion of the trial court that the policy of automobile liability insurance in question was not canceled prior to 10 April 1975 by the means specified therein. In support of this assignment the plaintiff contends that the trial court erred in treating the method of cancellation employed by the defendant as notice of cancellation rather than cancellation by surrender of the policy. We find the plaintiff's assignment and contention meritorious.

The policy by its terms specifically provides for cancellation "by surrender thereof to the company or any of its authorized agents or by mailing written notice to the company stating when thereafter the cancellation shall be effective." Assuming arguendo that the policy in question became binding when the plaintiff mailed it together with a premium statement to the defendant, we think the facts found by the trial court compel the conclusion that cancellation was effected by surrender of the policy to the plaintiff on 8 April 1975.

During the conversation between Mrs. Proctor and Mrs. McDonald on that date, the defendant instructed Mrs. Proctor to effect cancellation of the policy. In her initial attempt to do so, Mrs. Proctor attempted to add, apparently of her own volition, the condition that the policy be canceled "as it came due." She was then, however, advised by Mrs. McDonald that cancellation should be effected by surrender of the policy. Mrs. Proctor so advised the defendant. He then advised her that he did not have the policy with him and authorized Mrs. Proctor to have his name signed by the Agency to a Lost Policy Cancellation Release form at that time. Mrs. Proctor conveyed this instruction, and the form was signed for the defendant pursuant to his instruction. On the same day it was mailed by the Agency to the home office of the plaintiff. Therefore, the findings of fact by the trial court reveal that, whatever the intent of Mrs. Proctor in her initial attempt to cancel the defendant's policy "as it came due," the only mutual agreement of the parties, as communicated through the agents, was that the Lost Policy Cancellation Release be signed for the defendant on 8 April 1975.

As a general rule, when a liability insurance policy contains a provision allowing a cancellation at the request of the insured, the surrender of the policy with a request that it be terminated operates ipso facto as a cancellation. *Hayes v. Indemnity Co.*, 274 N.C. 73, 161 S.E. 2d 552 (1968); 43 Am. Jur. 2d, Insurance, § 423, p. 469. Additionally, the Lost Policy Cancellation Release signed for the defendant by mutual agreement of the parties specifically provided that: "[S]aid policy having been lost or mislaid, it is hereby agreed that said policy is hereby canceled and terminated as of 12 o'clock noon on the date hereof at the place where the property described in the said policy is located, and it is hereby agreed that no claim whatever will be made for any loss under said policy, and if found to return said policy to this Company forthwith and without further compensation." The defendant's signature was affixed to the form containing this agreement at his request and was, therefore, effective and had the same validity as though written by him. *Barrett v. Fayetteville*, 248 N.C. 436, 103 S.E. 2d 500 (1958).

It is apparent from the findings of fact of the trial court and from the contents of the form itself, that the Lost Policy Cancellation Release was intended by the parties to constitute an act in

lieu of the surrender of the actual policy. Thus, it was their mutual intent and agreement that the policy be canceled by its surrender and that the signing of the form constitute and be treated as such a surrender. As the signed form was mailed directly to the plaintiff Company on 8 April 1975, the surrender and cancellation were effective on that date. *Hayes v. Indemnity Co.*, 274 N.C. 73, 161 S.E. 2d 552 (1968).

[2] The defendant contends that, as the policy makes no specific provision for the use of a form, such as that employed in the present case, in lieu of surrender of the actual policy, the use of the form by the parties did not constitute surrender and must be treated as a written notice of cancellation rather than as cancellation by surrender. We do not find this argument persuasive, as the findings of fact by the trial court clearly indicate the parties mutually consented to cancellation by use of the form in lieu of actual surrender of the policy and not as a written notice of cancellation. The parties were free to mutually consent to this method of cancellation. *See Waters v. Annuity Co.*, 144 N.C. 663, 57 S.E. 437 (1907).

[3] The defendant also calls our attention to the fact that at the bottom of the release form and beneath the signatures of the defendant and the agent of the plaintiff, the phrase "Cancel flat effective 3-30-75" is typewritten. The defendant contends that this fact together with testimony by Mrs. McDonald indicates ambiguity as to whether the release form was intended to effect cancellation of the policy on 8 April 1975 or on its original effective date of 30 March 1975. The defendant further contends that this ambiguity prevented effective cancellation of the policy. We do not agree.

The typed notation referred to is on the bottom half of the form, which was introduced into evidence, and comes after its terms and the signatures of the defendant and the agent of the plaintiff. The notation is further separated from the signatures of the defendant and the agent of the plaintiff and from the terms of their agreement by a heavy line dividing the page from left to right. It appears, therefore, that the typed notation was merely an interoffice notation from one agent of the plaintiff Company to another and was not a part of the mutual agreement of the parties.

In any event, we do not think the defendant can be heard to complain if the plaintiff has now elected not to collect a premium for the period of insurance coverage from 30 March 1975 until 8 April 1975. Our holding that the policy was not canceled until 8 April 1975 renders the plaintiff's refusal to accept premiums for prior periods favorable to the defendant who received insurance coverage during those periods.

The plaintiff has brought forward and argued numerous other assignments of error. Our holding, however, makes it unnecessary for us to consider them.

For the reasons previously set forth herein, we find the trial court erred in its conclusions that the methods of cancellation provided by the terms of the policy were exclusive and were not complied with and that the time of cancellation was so equivocal as to be ineffective. The judgment of the trial court must be reversed and the cause remanded to the Superior Court of Wake County to the end that a judgment in favor of the plaintiff and consistent with this opinion may be entered.

The judgment of the trial court is therefore

Reversed and the cause remanded.

Judges PARKER and HEDRICK concur.