NORTHERN INSURANCE COMPANY OF NEW YORK, Plaintiff in Error,

v.

Paul H. FORD and Erma Lorene Ford, and Queen Insurance Company of America, Defendants in Error.

No. 39471.

Supreme Court of Oklahoma.

March 20, 1962.

Rehearing Denied May 2, 1962.

J. C. Pinkerton, James C. Pinkerton, Tulsa, for plaintiff in error, Northern Ins. Co. of New York.

Rosenstein, Mesirow & Fist, Tulsa, for defendants in error Paul H. Ford and Erma Lorene Ford.

E. J. Doerner and Philip N. Landa, Tulsa, for defendant in error Queen Ins. Co. of America.

BERRY, Justice.

At all times herein referred to, defendants in error, Paul H. Ford and Erma Lorene Ford, hereafter referred to as "plaintiffs", or by name, owned and operated several dry cleaning establishments in Tulsa, Oklahoma.

On November 27, 1952, defendant in error, Queen Insurance Company of America, hereafter referred to as "Queen", in consideration of a $50.00 cash deposit and monthly premiums to be paid, issued and delivered to Paul H. Ford Insurance Policy No. 3T 12811, which policy expired November 27, 1953, at noon.

In so far as material to the issues presented by this appeal, the policy covered the loss by theft of personal property of others (bailees) while in the possession of Paul H. Ford. It was provided in the policy that same "may be cancelled by the assured by mailing to the Company written notice stating when thereafter such cancellation shall be effective"; that the policy could be cancelled by company upon "mailing to assured * * * written notice stating when not less than five days thereafter such cancellation (would) be effective"; that the insurance would "not cover to the extent of any other insurance whether prior or subsequent hereto in date, and by whomsoever effected, directly or indirectly covering the same property, and this Company shall be liable for loss or damage only for the excess value beyond the amount of such other insurance."

The monthly premiums provided in the policy were based upon gross receipts accruing from assureds' dry cleaning business.

It appears that the policy was renewed from year to year until and including the period November 27, 1955, to November 27, 1956.

On November 26, 1956, plaintiff in error, Northern Insurance Company of New York, hereafter referred to as "Northern", in consideration of a premium of $25.00 and monthly premiums to be paid, delivered to plaintiffs Insurance Policy No. BC 56 90 239. The effective date of the policy was stated to be November 5, 1956 and the expiration date November 5, 1957.

The above-mentioned policy, as did the Queen policy, insured against losses arising from the theft of personal property of plaintiffs' bailees. It was provided in the policy that Northern did not insure against losses "if at the time of loss or damage, there be any other valid and collectible insurance covering against risks assumed by this policy which would attach if this insurance had not been effected." It appears that the monthly premium payable under this policy was less than the monthly premium payable under the Queen policy.

After plaintiffs had made known to Northern's local agent that they intended to purchase the heretofore insurance from Northern, the agent on November 20, 1956 addressed a letter to Queen's local agent. The body of the letter read as follows:

"Please find enclosed Queen Insurance Company Policies 521747 and 568074 which we are returning for cancellation at the request of Mr. Paul Ford.

"This coverage has been rewritten by this company as well as his Bailees' Customers policy. If he has a policy in force at present covering customers' goods, it is to be cancelled also."

On November 20, 1956, Queen's local agent addressed a letter to plaintiffs wherein plaintiffs were advised that Policy No.

3T 12811 was cancelled five days after receipt of the letter. While the local agent had authority to cancel the policy, she forwarded it to Queen's office in Kansas City, Missouri, without signature. Queen's Regional Manager subsequently signed the letter and caused same to be mailed to plaintiffs who received it December 7, 1956.

The parties stipulated that "on November 27, 1956 the cleaning establishment of plaintiffs at 1542 South Sheridan, Tulsa, Oklahoma, was burglarized and the property of customers of plaintiffs and in possession of the plaintiffs was stolen. That said property so stolen was valued at $2,-950.00; that plaintiffs have paid their customers who were the owners of said property in the total amount of $2,950.00 and that plaintiffs have established a loss of $2950.00." It was further stipulated that no premiums were reported, billed or paid under the Queen policy after October 27, 1956; that plaintiffs had furnished Queen and Northern with proofs of loss and had otherwise performed all conditions relevant to asserting a claim under each insurance policy; that Queen and Northern had each denied liability and had refused to pay the loss asserted by plaintiffs.

This action was originally instituted against Northern only. After Queen had been made a party defendant at the instance of Northern, plaintiffs filed an amended petition. In their first cause of action they sought judgment against Northern in the amount of $2,950.00, together with interest, and in their second cause of action, judgment against Queen in the same amount.

In its answer to plaintiffs' amended petition Northern alleged that its policy (No. BC 56 90 239) was not in effect when the loss in controversy was sustained. In its cross-petition it alleged in substance that Policy No. 3T 12811 issued by Queen was in effect at the time of the November 27, 1956, loss and stated if plaintiffs were to recover judgment against Northern, then Northern "should have judgment over" against Queen.

In its answer to plaintiff's amended petition and its answer to Northern's cross-petition, Queen alleged in substance that its policy was cancelled prior to plaintiffs' loss and that for said reason no liability accrued under its policy.

Following trial of case to the court, judgment was rendered in favor of plaintiffs against Northern only. From order of the trial court denying Northern's motion for new trial, Northern perfected this appeal.

The sole issue presented by this appeal is whether Northern's insurance policy was in effect at the time plaintiffs sustained the loss that forms the basis of their action.

Northern argues that the letter heretofore quoted, is so worded as to indicate that Queen's bailee policy was not being cancelled as of November 20, 1956; that the use of the phrase "it (Policy No. 3T 12811) is to be cancelled also" makes clear that the policy is to be cancelled at some date in the future; that under the heretofore quoted cancellation provision of the Queen policy, it would only be cancelled by plaintiffs stating in the notice of cancellation the date upon which the policy should be cancelled.

While the use of the phrase "to be" in the notice tends to render it ambiguous, when all verbiage used therein is considered, a permissive construction is that Northern had "rewritten" plaintiffs' fire and bailee coverage; that Queen's fire insurance policies which were enclosed should therefore be cancelled and if Queen had written a bailee policy it should also be cancelled. It is made clear in the notice that the fire insurance policies should be promptly cancelled upon Northern's receipt of the notice and it is clearly implied that any bailee policy that Queen had issued should also be promptly cancelled. Plaintiffs' reason for cancelling the bailee policy would be the same as their reason for cancelling the fire insurance policies, which, no doubt, was to avoid carrying more than one policy covering the same risk and thereby paying double premiums.

In Bache et ux. v. Great Lakes Ins. Co. et al., 151 Wash. 494, 276 P. 549, it was held that the procuring of new insurance by an assured for a term commencing before the expiration of the term of existing insurance, with intent to have the new insurance take the place of the existing insurance, may serve to effect a cancellation of the existing insurance. We are of the opinion that the rule so announced is applicable to the facts presented by this case.

In Atlantic Fire Ins. Co. of Raleigh, N. C. v. Smith et al., 183 Okl. 97, 80 P.2d 216, 218, it was stated that a "direct manifestation" on the part of an assured to cancel an insurance policy will serve to cancel same.

Northern contends that the evidence shows that plaintiffs did not intend to cancel the Queen bailee policy. Northern points out that while plaintiffs had the Queen policy in their possession they did not deliver it to Northern's agent so that it could be forwarded to Queen for cancellation. While it is true that plaintiffs had possession of the policy, the notice of cancellation is so worded as to indicate that Northern's agent had no personal knowledge of the policy. We refer to the fact that the agent stated in the notice that if Queen had issued a bailee policy it was also to be cancelled. Northern also points to the testimony of its agent who drafted the notice of cancellation to the general effect that he did not intend to cancel the Queen policy prior to the expiration date of same; that he intended that the Northern policy become effective at the expiration date of the Queen policy; that to otherwise proceed would subject plaintiffs to additional premiums. This testimony cannot be reconciled with the agent's action in drafting the Northern policy so as to state that same would become effective November 5, 1956, nor in Northern's accepting and retaining premiums provided in the policy beginning with the last mentioned date.

Northern also refers to testimony of Paul H. Ford to the effect that he did not specifically direct Northern's agent to cancel the Queen bailee policy. While Ford so testified, he also testified that he did not intend to carry two policies covering the same risk and thus pay double premiums; that he was of the opinion that the Northern policy became effective November 5, 1956. We note that this action was originally instituted against Northern only.

We are of the opinion that there is competent evidence sustaining the judgment of the trial court, and the judgment is therefore affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and HALLEY, JOHNSON, JACKSON, and IRWIN, JJ., concur.