Robert SCHROEDER, a Minor, by William Schroeder, His Father and Next Friend, Plaintiff-Respondent,

v.

James Wm. HORACK, Jr., Defendant,

and

Allstate Insurance Company, an Illinois Corporation, Defendant-Appellant.

No. 60828.

Supreme Court of Missouri, En Banc.

Dec. 6, 1979.

Rehearing Denied Jan. 15, 1980.

Samuel T. Vandover, James E. Godfrey and Denis C. Burns, St. Louis, for defendant-appellant.

Anthony M. Gioia and Warren A. Grauel, St. Louis, for plaintiff-respondent.

SEILER, Judge.

This is an appeal in a declaratory judgment action on a liability insurance policy. The case was transferred here after opinion in the Eastern District Court of Appeals, to resolve a question of general interest and importance pertaining to the law on cancellation of an insurance policy by the insured[1] and comes to the writer on reassignment. We will treat the case as though here on original appeal.

Respondent Robert Schroeder, a minor, by William Schroeder, his father and next friend, filed a petition in two counts. Count I asked for damages for personal injuries sustained by respondent when he was struck by a motorcycle driven by defendant James William Horack, Jr. In Count II, respondent sought a judgment declaring a liability insurance policy, issued by appellant to James Horack, Sr., to be in force and effect on May 11, 1974, the date of the accident.

The trial court decreed that the attempted cancellation by the insured did not conform to the policy provisions and that the liability insurance policy was in full force and effect on May 11, 1974 and designated the judgment as final within § 512.020, RSMo 1969, for purposes of appeal as set out in Civil Rule 81.06. Count I remains pending in the St. Louis County Circuit Court.

The case was submitted to the trial court without a jury, on an agreed statement of facts, with joint exhibits, which may be summarized as follows:

August 8, 1973 Allstate issued a liability policy numbered 10604364 to James Horack, Sr. covering the operation of a motorcycle. Coverage was effective from August 5, 1973 through August 5, 1974.

March 22, 1974 Allstate issued an oral binder extending the insurance to a second motorcycle and a second driver, James Horack, Jr., effective March 22, 1974. Allstate informed the policy holder, James Horack, Sr., that he would be billed at a later date.

May 1, 1974 Allstate sent Horack, Sr. a premium bill for $234.30 for the additional insurance on the second motorcycle and driver.

May 7, 1974 Allstate mailed a printed form "Renewal Questionnaire" to the policyholder.

May 8, 1974 Policyholder called his Allstate agent, Ray Kelly, and told the agent to cancel the policy. Pursuant to his request to do so, the agent prepared the necessary forms and mailed them to Allstate's regional office in Kansas City, stating under the "Remarks" section: "Cancel policy—Insured's request." The effective date was specified as "5–8–74."

May 9, 1974 Allstate's Kansas City office received the agent's forms, computer processed them and cancelled the policy on its records, effective May 9, 1974.

May 9, 1974 The policyholder secured a liability policy for the motorcycle involved here from another insurer (Financial Indemnity Insurance Company).

May 11, 1974 James Horack, Jr., while operating the second motorcycle, was involved in an accident with the plaintiff.

May 28, 1974 Allstate's Kansas City Office received the "Renewal Questionnaire" mailed to the policyholder on May 7, 1974. Written across the face of the questionnaire, above the policyholder's signature, was: "Note: This policy was cancelled effective May 8, 1974. Please remit check for portion of payment not used. Lower your rates and I'll be back."

The cancellation provisions of the liability policy issued by Allstate were as follows:

---

1. Portions of the opinion of the Eastern District are used without quotation marks.

"This policy may be cancelled by the named insured by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than 10 days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

■ On these stipulated facts, the trial court concluded there had been no cancellation. While this was a court tried case, it was on a stipulation of facts and was not one involving resolution by the trial court of conflicting testimony. As said in *Drysdale v. Cornerstone Bank*, 562 S.W.2d 182, 183 (Mo.App.1978), "The appeal is here upon an agreed statement of fact . . . Therefore, and contrary to counsel's assertion that our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 31 [1–3] (Mo. banc 1976), the only question before this court is whether the trial court drew the proper legal conclusions from the facts stipulated." Accord: *State ex rel. Ciba Pharmaceutical Products, Inc. v. State Tax Commission*, 382 S.W.2d 645, 651 (Mo. banc 1964); *Seiferer v. City of St. Louis*, 141 Mo. 586, 43 S.W. 163, 164 (1897); *Stone v. Corbett*, 20 Mo. 350, 352 (1855); *Surface v. Ranger Insurance Company*, 526 S.W.2d 44, 45 (Mo.App.1975).[2] We must necessarily address the legal consequences of the facts before us and if, under the stipulated facts, plaintiff is not entitled to relief against Allstate, we must so declare. Rule 84.14.

The cancellation clause before us is the standard clause found in automobile liability policies.[3] Under it, the insured has the right to cancel the policy on his own initiative, without being first required to obtain the insurer's permission. The insured can act unilaterally.

■ This is what occurred here. Under the undisputed facts there was a written cancellation made by the named insured in full compliance with the cancellation provisions of the policy. Horack, Sr. instructed agent Kelly to cancel the policy for him. Acting on Horack's behalf, Kelly prepared and transmitted the cancellation notice. There is nothing in the policy which says the insured cannot have someone else prepare and send in the cancellation notice for him. "An insured may authorize another to cancel an automobile insurance policy. Cancellation by the insured is not an act so personal in its nature that it cannot be delegated, in the absence of a statutory prohibition of such delegation." Blashfield, 7 Automobile Law and Practice § 293.6, at 258 (3d ed. 1966). "There is nothing in the ordinary principles of agency or insurance, however, that prevents insured from authorizing an agent to cancel his insurance policy . . . and a cancellation effected by an agent of insured is valid if he acts within the scope of his express or implied authority." 45 C.J.S. Insurance § 456 at 111–12 (1946). "The authorization by plaintiff of the agent of the companies to cancel the policies, as his [the insured's] agent . . . was not inconsistent with the duties which said agent owed to the companies. He had fully performed such duties when the policies were issued. The companies had consented that they should be canceled at any time upon the request of the plaintiff . . . [U]pon his request, made by his agent, defendant had no discretion with respect to the cancellation . . ." *Dawson v.*

---

**2.** Likewise, under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), we would not, on review of a court tried case, sustain the judgment of the trial court where the court has erroneously applied the law to the facts; *Montgomery v. Clarkson*, 585 S.W.2d 483 (Mo. banc 1979).

**3.** See N. Risjord and J. Austin, Automobile Liability Insurance cases, Standard Provisions and Appendix, (1974).

*Concordia Fire Insurance Co. of Milwaukee, Wisc.,* 192 N.C. 312, 135 S.E. 34, 36–37 (1926). "The same person may act in both capacities; he may be the agent for the insured, although as to the procuring of the insurance he also represents the company." *Meyers v. State Farm Life Ins. Co.,* 416 S.W.2d 10, 16 (Mo.App.1967). "[T]he policy gave insured the absolute right to cancel at any time by either of two methods: (1) by surrendering the policy to the company or any of its authorized agents, or (2) by mailing to the company written notice stating when thereafter the cancellation shall be effective. Furthermore, Sadler (the insured) could exercise that right personally or she could authorize another to act for her." *Hayes v. Hartford Acc. & Indem. Co.,* 274 N.C. 73, 161 S.E.2d 552, 556 (1968). "An insured may personally cancel his automobile liability insurance policy, or he may authorize another to act for him in canceling." *Griffin v. Hartford Acc. & Indem. Co.,* 264 N.C. 212, 141 S.E.2d 300, 302 (1965).

In the case at bar, Horack authorized the agent, Ray Kelly, to cancel for him. According to the stipulated facts, on May 8, 1974, Horack telephoned Allstate's agent, Ray Kelly, and told him to cancel the policy. The average American citizen who has an automobile liability policy which he wants to cancel does so by calling the insurance agent and telling him to cancel the policy. He does not sit down and write the insurance company a letter stating when thereafter the cancellation is to be effective. He leaves that to the insurance agent and that is the way this matter was handled. According to the authorities cited above, this is in all respects legal and proper.

Horack's telephone call on May 8 to the agent was not itself the equivalent of mailed notice to the company. This, however, is not the point. There is no reason why the insured cannot initiate his request for written cancellation by an oral request to the agent, by telephone or otherwise, to proceed on his behalf. The insurance policy contains no provision that the insured can deal with the agent only in writing.

According to the stipulation, "pursuant to the telephone request" of Horack, Kelly prepared a "Customer Service Request" form and mailed it to Allstate, which received it at the Kansas City office the following date, May 9, 1974.

The "Customer Service Request" form is a joint exhibit in this case. It refers to the Horack policy by number. Under the "Remarks" section appear these handwritten words: "Cancel Policy—Insured's Request." The effective date is specified as "5–8–74". It is signed by the agent, Ray Kelly.

No special cancellation form is prescribed by the policy. This document, prepared by Kelly pursuant to Horack's request and mailed to Allstate on Horack's behalf, was in strict compliance with the requirements of the cancellation clause. It was in writing, was completed by the named insured through his agent, was mailed to the company, stated when thereafter the cancellation shall be effective, and was received by the insurer on May 9, two days in advance of May 11, the accident date.

Under the leading authorities and cases, this cancelled the policy. To hold otherwise would materially alter the law on insurance policy cancellation by making it impossible to have a simple and direct method whereby the insured can cancel the policy. *See* Appleman, 6A Insurance Law and Practice, § 4226 at 662–63 (1972): "A request for cancellation of a policy must be unequivocal and absolute. Such a request alone has been held to be sufficient to terminate the policy; no surrender of the policy being necessary, nor any affirmative act on the part of the insurer." Here the request from Horack to the agent and the written cancellation notice sent to the company were both unequivocal and absolute. As stated in Couch, Cyclopedia of Insurance Law, § 67:100 at 453 (2d ed. 1967): "As a consequence of the unilateral character of cancellation by notice of the insured, no act by the insurer is required to make the cancellation effective. Specifically, it is not required that the insurer approve or accept the cancellation, and the request of the insured that the policy be cancelled accom-

plishes that result without any action by the insurer . . . ."

In *Dupeck v. Union Ins. Co. of America*, 329 F.2d 548, 557 (8th Cir. 1964), the court said, quoting the district court below: "The sole requirement to effect cancellation by the insured *is a definite and unconditional request for cancellation actually communicated to the Company.*" The appeals court stated it accepted this as "a correct statement of applicable Missouri law which is controlling here." In the case at bar, the request was admittedly communicated to the company, which received it in writing on May 9.

In *Vaughn v. Great American Ins. Co.*, 390 S.W.2d 622, 625 (Mo.App.1965), the court said: "Though we are not called upon and do not attempt to define the insured's right of cancellation in theoretical terms, it seems to us that the insured is simply given the power to terminate the contract at any time, and that neither the consent of the insurer nor any action upon its part is necessary to effect the cancellation . . . In short, the request itself effected the cancellation, though the insurer became the insured's debtor as to the unearned premium."

In *Mouchon v. Palmer*, 265 So.2d 429, 430 (Fla.App.1972), involving the same cancellation provision as in the policy before us, the court said: "The policy contained a cancellation clause which obviated the common-law offer-acceptance criteria. No action on the part of the insurance company was necessary or contemplated by the contract to communicate and consummate cancellation. The policy was effectively canceled upon the company's receipt of the notice of cancellation."

In *Hardware Mut. Casualty Co. v. Beals*, 21 Ill.App.2d 477, 158 N.E.2d 778, 782 (1959), the court said: "[W]hen cancellation is made by the insured the company may sit back and do nothing. It need not go through the physical motion of actually canceling the policy; it need not reply; it need not acknowledge receipt of the notice . . . since all contractual relations are at an end, with only a debtor-creditor relation existing for return of the unearned premium."

Nor did Horack at any time disaffirm or disavow any of the acts of Kelly as his agent.[4] Instead, on May 9, 1974 he took out liability insurance on the additional motorcycle with another company. This is consistent with the Allstate policy having been cancelled by the insured through his agent. It is inconsistent with coverage on the Allstate policy remaining in effect.

■ The fact that the cancellation notice specified May 8 as the effective date of the cancellation does not make the notice ineffective. The cases are in accord that the purpose of the provision requiring the insured to state when thereafter cancellation is effective is merely to forestall a retroactive notice of cancellation. In the case before us, that purpose was accomplished whether the notice is treated as effective on May 8, the date of its mailing, or on May 9, the date it was received by Allstate, both of which are prior to the accident of May 11, 1947. *See State Farm Mut. Auto Ins. Co. v. Pederson*, 185 Va. 941, 41 S.E.2d 64 (1974), where the insured requested cancellation of his policy "as of today"; *Hayes v. Hartford Acc. & Indemnity Co.*, 274 N.C. 73, 161 S.E.2d 552 (1968) (mailing of notice by insured's agent requesting immediate cancellation effected cancellation without any affirmative action being taken by insurer); *Northern Ins. Co. v. Ford*, 371 P.2d 92 (Okl. 1962) (insurance considered cancelled as of date insurer received written notice from insured that he had acquired new insurance covering the same risk and wished to cancel his policy); *Nobile v. Travelers Indemn. Co.*, 4 N.Y.2d 536, 176 N.Y.S.2d 585, 152 N.E.2d 33 (1958) (holding that where letter and policy put in mail on October 14 and endorsement of broker gave same date as date for cancellation, cancellation was effective October 14; the word "thereafter" means no more than that policyholder may not

---

4. In fact, he reaffirmed Kelly's acts by what he (Horack) wrote on the "Renewal Questionnaire", as discussed *infra*.

select cancellation date prior to date on which he sends in notice). The word "thereafter" in the cancellation provisions does not mean the notice of cancellation should specify some time after the notice date as the effective moment for cancellation. Such a notion would be contrary to the decided cases, unnecessarily restrictive of the insured's rights, and would overlook the fact that the insurer is not entitled to earn premiums beyond the date the insured elects to cancel, just so long as the insured does not attempt to cancel retroactively. The latter would be unfair if allowed as it would force the insurer to return earned premiums for coverage which had already been extended to the insured, but there is no sound reason why the insured should not be able to cancel as of the same date he gives notice. That enables him both to obtain other insurance promptly elsewhere without having to pay overlapping premiums for any period of time and also to recover the maximum of the unearned premium on the cancelled policy. The insured, in order to cancel the policy at his request, is not obligated to select some effective date sufficiently far in the future to insure that whatever the vagaries of the mail service, the occurrence of holidays, Sundays, weekends, or anything else his cancellation notice will arrive before the date he specifies for cancellation. To require otherwise would needlessly increase the cost to the insured by lengthening the time the policy must remain in effect and complicates what the policy intended to be simple and direct.

The "Renewal Questionnaire" before us is of interest. Horack, Sr. received it a few days after he received the $234.30 premium bill for the additional coverage on the second motorcycle. According to the stipulation, Horack wrote these words on the Renewal Questionnaire: "Note: This policy was cancelled effective May 8, 1974. Please remit check for portion of payment not used. Lower your rates and I'll be back"

and signed his name. This is corroboration of the strongest sort of what Horack had already done. The Renewal Questionnaire, dated May 7, 1974, is a printed form wherein Allstate, in substance, stated that in a few days it would be preparing the insured's policy for another year and that the information sought on the form (questions as to how the car was used, estimated annual mileage, which household members would drive the vehicle, etc.) was needed to make sure the policy records were correct. Allstate asked the insured to answer the questionnaire and return the form in an enclosed prepaid envelope. His remark on the Renewal Questionnaire that the policy had been cancelled May 8 is his emphatic reiteration of an accomplished fact, pointing out that he did not intend to renew, because his policy had already been cancelled May 8, 1974, and "lower your rates and I'll be back." It is to be noted that at the time of cancellation made through Kelly at Horack's request, May 8 was a current, not past, date.

It is argued the fact that the renewal questionnaire was not received by the Kansas City office until May 28 means it was mailed only shortly prior to that date. This argument is difficult to follow. If Horack had not cancelled prior to the accident of May 11, it is unbelievable that *after* the accident he would seek to have the Allstate policy which provided $50,000 protection for his son cancelled as of a date *prior* to the accident, when he knew the policy in the other company, Financial Indemnity Insurance Company, provided only $10,000 coverage. The important significance of the "Renewal Questionnaire" in this case, regardless of when it was received in Kansas City, is that it corroborates that Horack considered the policy cancelled as of May 8, 1974 and that he wrote his remarks on the questionnaire and mailed it prior to the accident.[5] In any case, once Horack cancelled unilaterally through Kelly acting on

5. The questionnaire shows the place of its origin as being Allstate's home office in Northbrook, Illinois. If that were the address on the postage paid return envelope which was enclosed for Horack's use in replying (and there

is nothing in the record on this one way or the other), it would explain the delay in the questionnaire finding its way to the regional office in Kansas City.

his behalf, with the insurer cancelling in accord on May 9, 1974, it makes no difference when Horack mailed the questionnaire.

This action is brought by the injured plaintiff, who is a stranger to the insurance policy, seeking to recover damages for personal injuries and also seeking a declaration that the Allstate policy was in effect on the date of plaintiff's accident. Plaintiff alleges that his injuries are serious and in his brief concedes that since the fact is that the insured, Horack, had obtained other insurance (with Financial Indemnity Insurance Company) after instructing his agent to cancel the Allstate coverage, "the short of the matter is Allstate's coverage of $50,000 as [compared] to the other insurance of $10,000." It is understandable that plaintiff would prefer to have a $50,000 policy in force rather than a $10,000 policy but this has nothing to do with the question of whether or not the Allstate coverage was cancelled.

The fact is that everyone who was here involved—before there was any accident, that is—treated the Allstate policy as having been cancelled. The accident of May 11, 1974 did not change the situation. Whatever coverage existed on May 11, 1974 was not with Allstate. The judgment is reversed and the trial court is directed to enter judgment that the Allstate policy was not in force and effect on May 11, 1974.

BARDGETT, C. J., DONNELLY, J., and FINCH, Senior Judge, concur.

RENDLEN, J., dissents in separate dissenting opinion filed.

WELBORN, Special Judge, dissents and concurs in separate dissenting opinion of RENDLEN, J.

MORGAN, J., not sitting.

WELLIVER and HIGGINS, JJ., not participating because not members of the court when cause was submitted.

RENDLEN, Judge, dissenting.

I respectfully dissent. I would hold the contract of insurance between Horack and Allstate Insurance Company was in effect May 11, 1974, the date of James Horack, Jr.'s accident with plaintiff Robert Schroeder because neither Schroeder nor Allstate had effectively terminated the contract prior to the time of the casualty.

The controlling fact is the language of paragraph 20 of the liability policy issued by Allstate which provides:

## CONDITIONS APPLICABLE TO ALL COVERAGE

### 20. CANCELLATION

[1] This policy may be cancelled by the *named insured by mailing to the company written notice stating when thereafter the cancellation shall be effective.* [2] This policy may be cancelled by the *company* by *mailing* to the *named insured* at the address shown in this policy *written notice stating when not less than 10 days thereafter* such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing. (Emphasis added.)

Appellant Allstate Insurance Company contends that the policy was cancelled by the insured on a written request pursuant to the terms of paragraph 20. In this regard it has been stated that effecting a unilateral cancellation of an insurance policy requires "strict compliance with the conditions provided in the policy for cancellation." *MFA Mut. Ins. Co. v. Southwest Baptist College, Inc.*, 381 S.W.2d 797, 801 (Mo.1964). Paragraph 20 of the policy provides for unilateral cancellation by the insured only on mailed written notice stating when *thereafter* the cancellation shall be effective. It should be emphasized that paragraph 20 makes *no* provision for unilateral *oral* cancellation, therefore Horack's telephone call to the agent of May 8 is not relevant to this point. If a phone call could accomplish cancellation, Horack could have called the company directly and instructed

them to cancel. This however would not suffice, for if such were permitted, contrary to the contract language, the company could (following such oral communication) sit and do nothing and the policy would remain in force and Horack would remain liable for payment of premiums. On the other hand if the company decided to *accept* the *oral offer* to cancel and *had communicated* by word or deed the fact of its *acceptance* to the *offeror* (Horack), the parties could be said to have "bilaterally" modified the contract and to have cancelled under the "new" agreement. No such *bilateral* agreement occurred in this case because there was no communication of the fact of acceptance of the offer. The Allstate Company failed to make any response to Horack until long after the casualty.

In this connection the following statement is pertinent:

> As the mutual agreement by which the policy is cancelled or rescinded is in its nature a contract, it follows that the elements of a contract must be present in order to give rise to a termination·by mutual agreement. Thus there must be a mutual consent as found in the offer of terms and their acceptance by the other party, and each party must act with knowledge of the material facts.

17 G. Couch, Cyclopedia of Insurance Law, § 67.205 (2d ed. 1967). Because each party to a mutual rescission surrenders his rights under the contract of insurance, the surrender of the one is consideration for the surrender of the other and no special consideration is necessary. *Id.*, § 67.208. The agreement to cancel the policy is a bilateral contract wherein the insured promises to give up his rights to coverage in the event of an accident in return for the insurer's promise not to enforce its right to payment of premiums. Thus, when an insured requests cancellation of the policy of insurance he is asking for a return promise and not the performance of a particular act as in this case the act of setting the computer into operation. By definition the exchange of a promise for a promise is a bilateral contract.

An insurer may accept the offer of cancellation by his conduct and the agreement to rescind need not be in writing. No set or precise form is required. *Id.*, § 67.209. It is essential, however, to distinguish conduct which manifests a non-communicated acceptance from conduct constituting a communication to the offeror of the acceptance. The insurer Allstate was not required to recite a litany or speak special words such as "I agree to cancel the policy," as the computer program is run. However, the company was required to communicate the fact of its *acceptance* to the insured. Hence, while many cases indicate that assent to an offer of rescission may be implied from the acts and conduct of the parties with respect to the subject matter of the contract and need not be established by proof of express agreement to rescind, *In re Estate of Reed*, 414 S.W.2d 283 (Mo.1967); *Henges Co. v. May*, 223 S.W.2d 110 (Mo. App.1949), these cases do not stand for the principle that communication of that assent to the offeror may be dispensed with as an essential element of a contract of rescission.

It is well established that insurance is a matter of contract and is governed by the rules applicable to contracts. *Hartford Acci. Indem. Co. v. Farmington Auction, Inc.*, 356 S.W.2d 512, 518–519 (Mo.App. 1962); *Hall v. Missouri Ins. Co.*, 208 S.W.2d 830, 832 (Mo.App.1948). If an offer to rescind an insurance contract is a bilateral contract (exchange of a promise for a promise), then the rules governing formation of bilateral contracts apply. Application of these basic contract principles required appellant to communicate its acceptance of the policyholder's offer to rescind the contract before a completed contract of cancellation could be formed. No communication of that acceptance was sent to the policyholder. Appellant received the "Customer Service Request" form on May 9, 1974, from its agent and processed it without ever indicating to the policyholder it had accepted his offer. Appellant's conduct manifesting its acceptance took place at its Kansas City office and appellant introduced no evidence indicating that the policyholder had any knowledge of its acts or any means of dis-

covering that cancellation had indeed occurred.

Returning to the language of the contract, it is not immediately apparent from the language in paragraph 20 whether the parties intended the mailed notice to be effective on the date of mailing or on the date of its receipt by Allstate. Though the cases on point are few, they indicate a general rule that unilateral notice by the insured will not be effective until it is received by the insurer, e. g., *Dupeck v. Union Ins. Co. of America*, 329 F.2d 548, 557 (8th Cir. 1964); *Mann v. Charter Oak Fire Ins. Co.*, 196 F.Supp. 604, 610 (E.D.Ark.1961), *aff'd.* 304 F.2d 166 (8th Cir. 1962), and the commentators agree. 6A J. Applebaum, Insurance Law and Practice § 4226, at 660 (rev. ed. 1972); 17 G. Couch, Cyclopedia of Insurance Law § 67.103 (2d ed. 1967). *See also* 45 C.J.S. *Insurance* § 458, at 117 (1946); 43 Am.Jur.2d *Insurance* § 426 (1969). It was stipulated that the writing by which Allstate seeks to prove written unilateral cancellation of the policy by the insured was not received by Allstate until May 28, 1974, 17 days after the casualty occurred. Under the authorities cited above, the written notice could not effect cancellation of the policy prior to that date.

Furthermore, paragraph 20 requires the written notice must specify "when thereafter the cancellation shall be effective." In this context the term "thereafter" refers to an event that will occur after the mailing of notice, thus it is required that the notice specify a *future* date, i. e. some time *after* the mailing and in no event before the notice is received by the company as the effective moment for cancellation. The writing of James Horack, Sr., names not a *future* date but a past date by stating the policy "was cancelled" May 8. Without strict compliance with the policy restrictions on unilateral cancellations—that is, without naming a future date on which the cancellation would be effective—the written statement of James Horack, Sr., could not operate as a cancellation effective earlier than the company's receipt of the notice on May 28. *See Dyche v. Bostian*, 361 Mo. 122, 233 S.W.2d 721, 724 (Mo.banc 1950);

Annot., 8 A.L.R.2d 203 (1950). Further, § 379.195, RSMo 1969, prohibits cancellation of an insurance policy providing coverage for "bodily injury . . . by accident" occurring prior to the attempted cancellation so as to impair any claim of the injured party against the insurer. *See Dyche*, 233 S.W.2d at 724. Accordingly, as the cancellation could not have been effective prior to May 28, the cancellation on that date could not alter appellant's responsibility under the policy for the casualty of May 11.

The majority glosses over the referenced language of the insurance contract which provides, "This policy may be cancelled by the named insured by mailing to the company written notice *stating when thereafter the* cancellation shall be effective." They suggest the defendant company's agent performed the acts specified in the policy to be performed by the insured. In other words the majority would make a construction of the policy most favorable to Allstate (the insurer) and construe the requirement as permitting the insured's agent to perform the condition devolved on the insured by the contract's special language. In so doing the majority contravenes a cardinal principle of insurance law that unambiguous language of a policy of insurance must be given its plain meaning, but insofar as it is open to different constructions, that construction most favorable to the insured must be adopted. *Packard Mfg. Co. v. Indiana Lumberman's Mutual Ins. Co.*, 356 Mo. 687, 203 S.W.2d 415, 416 (Mo.banc 1947).

To accomplish this result the majority goes de hors the record and states:

> The average American citizen who has an automobile liability policy [the terms of which are not shown] which he wants to cancel does so by calling the insurance agent and telling him to cancel the policy.

The principal opinion concludes from this unsupported statement of so-called fact, that because the "average" citizen leaves it to the agent as to the manner cancellation will be handled, the parties here, notwithstanding their written contract, are bound by what the majority perceives the public

might do. This statement seems flawed for several reasons:

*First*: Without record evidence the majority, unsupported by any suggestion of authority for so doing, takes judicial notice of what it believes that the average American citizen would do under general circumstances. The majority in so doing ignores the fact that Horack certainly must be considered an "average American citizen" and that he recognized under *his contract* some form of written cancellation was required from him. In that awareness of the contract requirement he as an average American policyholder mailed his written memorandum of cancellation to Allstate and it was received by that company May 28, 1974.

*Second*: What the "average citizen" might generally do is quite irrelevant because the named insured in this case, to accomplish unilateral cancellation, is required to "mail a written notice." The majority either considered this provision unimportant or would construe it to the pronounced disadvantage of the insured by holding that a phone call to an agent is equivalent to "mailing to the company *written notice*" stating the fact of cancellation. If we are going to decide insurance claims on the basis of what the ordinary man on the street feels he would do in the circumstance of various cases, we perhaps could dispense with the necessity of written contracts and their precise provisions as well as the body of interpretive cases developed through years of experience in the field of insurance law.

*Third*: The notice sent by the Allstate agent to the Allstate office suffered the same infirmity and lack of conformance to the policy requirements as the later notice sent by Horack and received May 28, 1974. That is, it did not "[state] when thereafter the cancellation shall be effective." But by giving a construction favorable to the insurance company, the majority permits an intracompany memo from the insured's agent to the insurance company, not in conformance with the express language of the policy to accomplish the cancellation.

The rule of construction contravened by the majority is that if a policy or contract of insurance is to be construed, it should be construed in favor of the insured and strictly against the insurer. *State ex rel. Mut. Ben. Health & A. Assn. v. Trimble*, 334 Mo. 920, 68 S.W.2d 685, 687 (Mo.1934). The reason for the rule is that the insured has no voice in the selection or arrangement of words employed and that the language of the contract is selected with great care and deliberation by experts and legal advisors employed by and acting exclusively in the interest of the insurance company, which therefore is at fault for any ambiguity or uncertainty therein. *Soukop v. Employers Liability Assurer Corp. Lim. of London*, 341 Mo. 614, 108 S.W.2d 86 (Mo.banc 1937). The rule is applied to the language of insurance policies, where it is fairly susceptible to such favorable interpretation, so as to afford protection to the insured and sustain rather than defeat his claim for indemnity under the policy. Accordingly, in keeping with what I believe to be the established law I would hold the attempted oral cancellation ineffective and that the policy remained in force until May 28.

The cases relied upon by the majority do not dictate a contrary result to that which I suggest. None of the cases cited involve an oral request by an insured to his agent or the insurer amounting ipso facto to a cancellation of insurance coverage. For example, in *Mouchon v. Palmer*, 265 So.2d 429, 430 (Fla.App.1972), the insured cancelled his policy by sending the insurer *written notice*, a policy receipt card. Another cited case, *Hardware Mut. Casualty Co. v. Beals*, 21 Ill.App.2d 477, 158 N.E.2d 778, 780–781 (1959), (Emphasis supplied) involved the efficacy of a *written cancellation* by the insurer in response to an unauthorized *written notice* of cancellation by the insured. Finally, two of the North Carolina cases cited, *Griffin v. Hartford Acci. & Indem. Co.*, 264 N.C. 212, 141 S.E.2d 300, 302 (1965) and *Hayes v. Hartford Acci. & Indem. Co.*, 274 N.C. 73, 161 S.E.2d 552, 554 (1968) involve a factual situation not relevant here. Cancellation was accomplished by a finance company through written notification *pur-*

*suant to its power of attorney* after nonpayment of premiums by the named insured.

Though the majority opinion claims a contrary result would be unnecessarily restrictive of the insured I believe the rationale of this policy statement ignores the likely harsh and potentially tragic result of an insured standing as a defendant in a negligence action stripped of insurance protection and a plaintiff left holding an unsatisfied judgment. A more reasonable policy consideration would lead us to follow the existing law and require compliance with the express termination provisions of the contract. Upholding the agreement between the parties is the best way to protect each party's reasonable expectations as well as the rights of those injured. Additionally, requiring written notice by the insured eliminates the vagaries of proof as to whether vel non an oral request for termination occurred. It seems apparent this vital consideration requiring evidence in writing led to the careful language of paragraph 20.

Moreover, the majority opinion introduces another vagary into the law respecting termination of insurance policies. The majority does not tell with certainty what act revoked the policy or at what time the policy terminated. We are told only that it terminated before May 11, i. e. on May 8 or May 9, 1974. This breaking away from the contract's language leaves open these questions: When is the policy effectively terminated? Does it occur when the insured makes an oral request to his agent, or when the agent tenders a written notification to the carrier, or when the carrier receives that request, or when the carrier processes that request and sends written confirmation? Or is it necessary under this ad hoc arrangement that anything be put in writing? Keep in mind that Horack said nothing to the Allstate agent about any writing of any kind. Nothing was said or suggested about any writing from Horack to the agent or Horack to the company.

Superficially it might seem that to hold the cancellation was not effective because Allstate failed to notify the policyholder it had accepted his offer and would cancel on his oral request to the agent rests on an unduly strict application of contract law. But—what if Allstate had rejected the offer to cancel? What if the policyholder had awaited Allstate's response to his request before reinsuring? The act demanded of Allstate is not complex, expensive or time-consuming. A letter, a postal card or even a telephone call to the policyholder from Allstate's office or from the agent might have sufficed. Instead, Allstate failed to notify its acceptance of the offer and we must deal with the facts as they are, applying established legal principles to those facts.

I would hold, in accordance with existing precedent, that the policy terminates upon receipt by the insurer of the insured's written notice of cancellation. *Dupeck v. Union Insurance Co.,* 329 F.2d 548, 557 (8th Cir. 1964). As there was no compliance with the policy provisions respecting termination until May 28, the policy did not terminate until that date. *MFA Mutual Ins. Co. v. Southwest Baptist College Inc.,* 381 S.W.2d 797, 801 (Mo.1964); *Dyche v. Bostian,* 229 S.W.2d 25, 28 (Mo.App.1950). Accordingly, I would affirm the judgment of the trial court.