IOWA NEWS DISTRIBUTING CO., INC., Plaintiff/Appellant,

v.

RACING SERVICE CORPORATION, Defendant/Appellee,

v.

MERCHANTS NATIONAL BANK OF CEDAR RAPIDS, Third Party Defendant/Appellant.

Nos. 53620, 53621.

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 6, 1988.

Application to Transfer Denied Nov. 15, 1988.

Vincent D. Vogler, Mark D. Pasewark, Mina Saiedy Nami, St. Louis, for appellant.

Mann, Roger, Wittner & Hereford, Howard A. Wittner, David A. Sosne, St. Louis, for appellee.

SMITH, Judge.

Plaintiff, Iowa News Distributing Co., Inc., appeals from a judgment against it on its petition and a judgment against it and in favor of defendant, Racing Service Corporation on Racing's counterclaim in the amount of $138,781.66 plus interest of $100,311.40 and attorney's fees of $5,000. Third party defendant, Merchants National Bank of Cedar Rapids, appeals from a judgment against it on Racing's third party petition in the same amount. The judgments against Iowa News and Merchant's were made joint and several.

The facts are rather complicated. All were submitted to the court by stipulation. In that posture our review is to determine if the trial court drew the proper legal conclusions from the facts stipulated. *Schroeder v. Horack,* 592 S.W.2d 742 (Mo. banc 1979) [1].

New Orleans Distribution Associates was a limited partnership engaged in the distribution of the Racing Form and paperback books. The general partner was Southern Periodical Distribution Company. Stanley Seidler was the president of Southern until 1974. Seidler was, and presumably still is, the president and chief operating officer of Iowa News, which is engaged in the distribution of books and periodicals. In 1974, Allen and Mark Molasky purchased Southern and Seidler resigned from

that company. The Molaskys are the principals of Racing Service.

On April 5, 1975, New Orleans executed a note for $225,000 payable to Merchants. The bank required personal guarantees of the note from Seidler and the Molaskys. These were executed contemporaneously with the note. On December 8, 1976, New Orleans filed for bankruptcy. That case is still pending. Prior to that date payments for principal and interest had been made to Merchants on the note, reducing the outstanding principal to $167,562.74 on November 1, 1976, at which time the note was in default. Merchants demanded payment from Seidler and the Molaskys under their personal guarantees. Seidler made the payment and received from Merchants an assignment of the bank's causes of action against the Molaskys and New Orleans. Seidler then brought suit in the name of Merchants in federal district court in Iowa against the Molaskys. On August 8, 1977, judgment was entered in favor of Merchants for $167,562.74 principal and interest and $9,750 attorney's fees. That judgment became final. Merchants, acting through Seidler, also filed a claim in Bankruptcy Court based upon the note.

Seidler on behalf of Merchants registered the judgment in federal district court in St. Louis and issued garnishments in aid of execution. These garnishments sought to reach funds held in trust for Molaskys. The garnishments were terminated when the court refused a pay-in order. The Molaskys notified Merchants and Seidler that they believed they had a cause of action for wrongful garnishment.

In an effort to resolve the various existing problems Merchants and Racing Service entered into the agreement which is the subject of the cause before us. Following the bankruptcy of New Orleans, trusts for the benefit of relatives of the Molaskys purchased at auction a large portion of New Orleans stock in trade, including a large number of paperback books. These purchases were made in lot at a price substantially below that otherwise available to wholesalers. The books were placed in storage in a warehouse of Racing Service.

Iowa News was in a position to sell some of the books. Seidler was willing for Iowa News to purchase the books if the price would be sufficiently below the normal cost that the difference would discharge a portion of the indebtedness of Molaskys under the note. As a distributor, Iowa News could acquire books through normal channels at approximately fifty percent of retail value. The Molaskys "contemplated" that with a price below normal wholesale cost a substantial profit could still be realized.

The agreement entered into provided for several reciprocal actions. Racing Service would furnish to Iowa News, within 90 days, books having a retail value of $250,000. The Molaskys and Racing Service would execute mutual releases with Merchants releasing each other from all claims, demands, debts, causes of action either might have against the other. The releases were executed. Merchants also agreed to assign its Iowa judgment against Molaskys to Racing Service and to execute a satisfaction of that judgment. That was done. Merchants assigned all rights to its pending bankruptcy claim to Racing Service including an agreement that any sums distributed to Merchants by the trustee would be turned over to Racing Service. The agreement then provided:

"7. Merchants does hereby transfer, assign and convey, as stated herein, to Racing without recourse, all of its rights, title and interest in and to every and all notes, loans, claims, debts, judgments, collateral, *receipts*, guarantees and causes of action, of any kind whatsoever, which arises or arose out of any loans, notes, debts or other obligations, which Merchants may have had against any of the Molaskys or others, or the *bankruptcy entity referred to in paragraph 6 herein*, including, but not limited to, claims, debts, judgments, collateral, *receipts*, notes, guarantees, damages and causes of action which arises or arose out of any debts, notes, loans, or guarantees by any of the Molaskys or others, or the *bankrupt entity referred to in paragraph 6 herein ... ."* (Emphasis supplied).

The bankruptcy entity referred to in paragraph 6 was the "Bankruptcy Estate of New Orleans Distribution Associates, Claim No. 44." Several additional undertakings were included in the agreement which are not pertinent here. The thrust of the agreement was to settle all disputes and pending controversies between Merchants, Iowa News, Seidler, Racing Service and the Molaskys. Pursuant to a paragraph in the agreement Merchants assigned all of its interest in the agreement to Iowa News which assumed all responsibilities under the agreement.

Racing Services made one delivery to Iowa News of books having a retail value of $25,000. No further deliveries were made. The agreement was dated July 24, 1979. On January 7, 1980, Racing Service declared Merchants in default of the agreement and demanded an accounting of all amounts received on account of the note from New Orleans before and after the agreement and demanded payment of such amounts. The basis of this demand was that Racing Service was entitled to the money received by Merchants from New Orleans prior to New Orleans filing for bankruptcy. The trial court by its judgments upheld the position of Racing Service.

The effect of the trial court's ruling is to eliminate a $177,000 judgment plus interest of approximately $30,000 against the Molaskys, enter a judgment in favor of their company for approximately $138,000 and interest and fees of $105,000, and place their company in a position to recover any distribution made from the bankrupt estate. The Molaskys, individually or through their company, will receive, under the trial court's interpretation of the agreement, a benefit of at least $450,000. Seidler, and his company in exchange, as a result of this interpretation, will receive $12,500 in wholesale value of books and a release of a possible wrongful garnishment action. A result as one-sided as that must find clear support in the contract. Iowa News' interpretation of the contract would eliminate a $177,000 judgment against the Molaskys in exchange for books having a wholesale value of $125,000 acquired by

Molaskys for less, and release of a wrongful garnishment claim. Molaskys would obtain the possibility of recovering some of the Merchant claim in the bankruptcy proceeding.

The parties have focused on the meaning of the word "receipts" in paragraph 7. Racing Service contends the word is unambiguous and refers to any monies which Merchants received as a result of its loan to New Orleans. Iowa News and Merchants contend the word is ambiguous and was intended to refer only to monies received in repayment of that loan after the date of the agreement. The difficulty, of course, is that the parties chose to incorporate a series of possible choses in action into paragraph 7 encompassing past, present, and future existence without delineating which time frame applied to each. We do not find it necessary to determine, however, the meaning of "receipts", a somewhat unusual term to be applied to repayment of principal and interest on a loan.

We focus rather on the source of the "receipts". The agreement provides they are receipts from "debts, notes, loans, or guarantees of the Molaskys or others, or the bankrupt entity referred to in paragraph 6 herein ... ." No monies were received from the Molaskys. We are unable to conclude that "others" has reference to New Orleans. The obligation arising from the New Orleans borrowing is specifically delineated by reference to the "bankrupt entity." "Others" was intended to refer to individuals having a relationship with Molaskys in connection with their guarantees, who might bear some personal liability for those guarantees. To apply to it a meaning beyond that could make it apply to any debtor of the bank, a ridiculous interpretation. The "bankrupt entity" is by definition the "Bankruptcy Estate of New Orleans Distribution Associates, Claim No. 44."

11 U.S.C. § 541(a) provides that the commencement of a bankruptcy action "creates an estate." Into that estate goes all of the legal and equitable interests of the debtor. From that estate the debts of the debtor

are to be satisfied to the extent possible. Section 541 makes abundantly clear that the "debtor" and the "estate" are two legally different and distinct entities. The estate is considered as in custodia legis from the filing of the petition. *In re Merchandise Mart of Columbia,* 79 F.Supp. 686 (E.D.S.C.1948) [6]. Upon filing of the petition all of the debtor's property becomes property of the estate. *In the Matter of Jones,* 768 F.2d 923 (7th Cir.1985) [2, 3].

 The agreement provided for receipts arising from debts, loans, notes or guarantees of the "estate" not of the debtor. At the time of the filing of the petition in bankruptcy the claim of Merchants became a debt of the estate. The amount of that debt was the amount of principal and interest due on the loan on the date of the bankruptcy petition. Prior payments on that loan reduced the amount of the claim but they were in no way receipts from any debt of the estate. Any claims which Molaskys might have as a result of paying the guarantees must be made as claims against the estate, not the debtor. The estate made no loans, and executed no notes or guarantees. The amount of Racing Service damages stipulated to by the parties in the event the trial court found for Racing Services indicates that the estate made no payments after commencement of the bankruptcy. By the unambiguous language of the agreement Racing Service was entitled to no "receipts" predating the commencement of the bankruptcy action. What it received from Merchants were only receipts on Merchants claim against the estate. The trial court erred in holding to the contrary.

The parties have stipulated to the amount of damages to which Iowa News is entitled if it prevails on its petition and that it is entitled to "applicable interest and attorney's fees." Unless Iowa News and Merchants initially breached the contract, Iowa News is entitled to recover on its petition as it is evident that Racing Service did not perform its obligations under the contract. We have found no breach by either Merchants or Iowa News.

On the appeal of Merchants National Bank of Cedar Rapids, the judgment is reversed.

On the appeal of Iowa News Distributing Co. Inc., the judgment on the counterclaim of Racing Service Corporation is reversed. Judgment on the petition of Iowa News Distributing Co. Inc. is reversed and the cause remanded for entry of judgment in favor of Iowa News Distributing Co. Inc. and against Racing Service Corporation in the amount of $133,435.00 plus applicable interest and attorney's fees.

KAROHL, P.J., and KELLY, J., concur.