SSM HEALTH CARE, operating St. Mary's Hospital, Appellant,

v.

MISSOURI HEALTH FACILITIES REVIEW COMMITTEE, Respondent.

No. 77030.

Supreme Court of Missouri, En Banc.

March 21, 1995.

David M. Harris, Charles A. Seigel, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen King Mitchell, Asst. Atty. Gen., Jefferson City, for respondent.

Lem T. Jones, Jr., Paul G. Marx, Kansas City, for amicus curiae Missouri Citizen Action.

L. Franklin Taylor, Allan E. Coon, Olathe, for amicus curiae Dr. Richard Morrison and Radiarium Corp.

Harvey Tettlebaum, Jefferson City, for amicus curiae Missouri Health Care Ass'n.

Lori J. Levine, Jefferson City, for amicus curiae Missouri Hosp. Ass'n.

LIMBAUGH, Judge.

SSM Health Care appeals the trial court's ruling that it is subject to the jurisdiction of the Missouri Health Facilities Review Committee under the Missouri certificate of need law, § 197.300, et seq., RSMo 1994. The Court of Appeals, Western District, affirmed the trial court, and thereafter, this Court granted transfer.[1] We now reverse.

### I.

The crux of the Missouri certificate of need law (CON law) is set out in § 197.315, which states in pertinent part:

1. Any person who proposes to develop or offer a new institutional health service within the state must obtain a certificate of need from the committee prior to the time such services are offered.

2. Only those new institutional health services which are found by the committee to be needed shall be granted a certificate of need. Only those new institutional health services which are granted certificates of need shall be offered or developed within the state. No expenditures for new institutional health services in excess of the expenditure minimum shall be made by any person unless a certificate of need has been granted.

The Missouri Health Facilities Review Committee (the Committee) is the agency of the State of Missouri responsible for administer-

ing the CON law. As one of its responsibilities, the Committee must determine which projects come within the purview of the CON law.

SSM Health Care (SSM), a Missouri not-for-profit corporation, owns and operates St. Mary's Hospital of Blue Springs (St. Mary's). St. Mary's developed an outpatient radiation therapy service located in a commercial office building adjacent to the St. Mary's campus. The building is one of three office buildings at that site, all of which were constructed by and are owned by a private developer, Culbertson–House Development Partnership (Culbertson–House). St. Mary's has no ownership interest in, or affiliation with, Culbertson–House.

St. Mary's leased a portion of the building, approximately 4,000 square feet, for the radiation therapy service. The term of the lease is three years, with options to renew for two additional three-year terms. However, there is no option to lease the remaining space, nor to purchase the building on completion of the lease term(s).

In order to develop the leased premises, St. Mary's incurred a number of expenditures, including: $116,667.49 for construction of a vault to hold some of the radiation therapy equipment; $120,024.17 for a "tenant finish;" $79,586 to move and install radiation therapy equipment; $26,612.06 for furnishings and miscellaneous equipment; $25,000 for architectural and engineering services; and $50,000 to acquire an easement and build a road from St. Mary's to the radiation therapy service.

St. Mary's also paid $56,750 to acquire and update radiation therapy equipment consisting of a simulator and linear accelerator. This equipment was originally purchased by St. Mary's Hospital of Kansas City, which was also owned and operated by SSM, for a price of $478,002.20. In 1988, St. Mary's acquired the equipment by intracorporate transfer from St. Mary's Hospital of Kansas City at a cost of $48,250, and then paid $8,500 to update the equipment.

---

**1.** Amici curiae briefs were filed by the following: 1) Dr. Richard A. Morrison and Radiarium Corporation; 2) Missouri Citizen Action; 3) Missouri Health Care Association; and 4) Missouri Hospital Association.

On March 7, 1991, the Committee notified SSM of its determination that the project was reviewable. The Committee directed SSM to initiate the CON review process or face the prospect of an injunction suit by the Office of Attorney General. Thereafter, on April 2, 1991, SSM filed two suits, the first requesting a declaratory judgment that the Committee had no jurisdiction over the project, and the second requesting a writ of prohibition to prohibit the Committee from asserting that jurisdiction. The two suits were consolidated, and SSM's request for a preliminary writ of prohibition was granted. In the first suit, the Committee counterclaimed for a declaration that the radiation therapy service was reviewable.

The trial court entered judgment on July 1, 1993, in favor of the Committee on all claims. The court then withdrew its preliminary order in prohibition, but later granted SSM's motion to stay the judgment pending appeal.

## II.

■ Because this case was tried on a stipulation of facts, the Court need only decide whether the trial court drew the proper legal conclusions from those facts. *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979). The trial court held that the radiation therapy service was reviewable by determining that the service constituted a "new institutional health service," the criterion for which a certificate of need is required under § *197.315*. In this determination, the trial court relied on § *197.305(11)*, which sets out seven alternative definitions of the term "new institutional health service." The trial court found that four of the seven definitions apply to the service in question. Those definitions include:

(a) The development of a new health care facility;

(b) The acquisition, including acquisition by lease, of any health care facility, or major medical equipment costing in excess of the expenditure minimum;

(c) Any capital expenditure by or on behalf of a health care facility in excess of the expenditure minimum;

* * *

(f) Health services, excluding home health services, which are offered in a health care facility and which were not offered on a regular basis in such health care facility within the twelve-month period prior to the time such services would be offered . . . .

§ *197.305(11)* (hereinafter *11(a)*, *11(b)*, *11(c)* and *11(f)* ).

The trial court's application of these subsections depended, at least in part, upon a finding that the radiation therapy service was a "health care facility." Under § *197.305(7)*, the definition of "health care facilities" includes hospitals, and also other types of medical facilities not pertinent to this case. In concluding that the radiation. therapy service qualifies as a hospital, the trial court relied on § *197.020.2*, which, at the time of the ruling, provided:

"Hospital" means a place devoted primarily to the maintenance and operation of facilities for the diagnosis, treatment or care for not less than twenty-four hours in any week . . .; or a place devoted primarily to provide for not less than twenty-four hours in a week medical or nursing care. . . .

However, the legislature amended this definition effective June 3, 1994, soon after the Court of Appeals issued its opinion in this case. The new definition requires that a facility must be open 24 *consecutive* hours to be a hospital. § *197.020.2, RSMo 1994*. On transfer to this Court, both parties agree that the new definition applies to the radiation therapy service. Furthermore, both parties, having stipulated that the radiation therapy service is not open for 24 hours in any day, now agree that the radiation therapy service is not a "hospital," and consequently is not a "health care facility."

This conclusion, however, does not dispose of all issues. The fact that the radiation therapy service is not a "health care facility" clearly defeats the application of 11(a), which requires only the determination that there is a new health care facility. On the other hand, the application of subsections 11(b), (c) and (f), are not entirely dependent upon a determination that the service is a "health

care facility." In that regard, we consider each of these subsections in turn.

## A.

■ Subsection 11(b) applies not only to the acquisition of a "health care facility," but also to the acquisition of "... major medical equipment costing in excess of the expenditure minimum." *Section 197.305(6)* defines "expenditure minimum" as:

> six hundred thousand dollars in the case of capital expenditures, or four hundred thousand dollars in the case of major medical equipment and new institutional health services as described in subdivision (11), paragraphs (a), (b), (c), (d), (e), (f), and (g), unless such sum exceeds federal regulations.

SSM argues that St. Mary's did not exceed the $400,000 "major medical" expenditure *minimum*.

As noted, the major medical equipment acquired by St. Mary's for the radiation therapy service consisted of a simulator and linear accelerator. The trial court included in its calculations the original purchase price of $478,002.20 paid by St. Mary's Hospital of Kansas City. However, the parties stipulated that the cost to St. Mary's (of Blue Springs) was only $48,250, the acquisition cost in 1988. It was further stipulated that the total major medical equipment expenditures incurred by St. Mary's were $56,750, the $48,250 plus the $8,500 upgrade.

In context, the "acquisition" referred to in 11(b) is not the original acquisition for use by St. Mary's of Kansas City, but instead the acquisition for use in the new radiation therapy service for which the reviewability determination is made. Thus, the $56,750 cost should have been used in the calculations. The trial court erred in finding that the $400,000 expenditure minimum of 11(b) had been exceeded.

## B.

■ Subsection 11(c) applies to capital expenditures "by or on behalf of a health care facility" that exceed the expenditure minimum. Although the radiation therapy service is not, itself, a "health care facility," capital expenditures were made by St. Mary's, which is a "health care facility." The definition of "expenditure minimum" in *§ 197.305(6)* is confusing as it pertains to capital expenditures. The statute establishes a $600,000 threshold, but it can also be read to establish a $400,000 threshold to "new institutional health services" under all subsections of *§ 197.305(11)*, including capital expenditures in subsection (c). All parties agree, as do we, that the $600,000 threshold applies. To say otherwise is to apply the $400,000 threshold to the exclusion of the $600,000 threshold in every case. This, we conclude, would render the $600,000 threshold meaningless.

SSM concedes capital expenditures totaling $417,889.72. With that figure, however, the trial court included 1) the construction cost of the building attributable to that part of the building leased by St. Mary's, 2) the entire cost of the land, and 3) the original purchase price of the medical equipment. If any of these costs are included, SSM would exceed the $600,000 expenditure minimum.

SSM argues that the construction costs for the building and the cost of the land were not made "by or on behalf of" St. Mary's. We agree. The building and the land are owned solely by Culbertson–House, which neither acquired the land nor built the building for St. Mary's or at St. Mary's request. St. Mary's merely leases the space without any prospect of expansion or ownership.[2] Under these circumstances, the costs of the land and building are attributable solely to Culbertson–House. The trial court erred in including these costs in its calculations.

■ SSM also contends that the medical equipment should not be included as a capital expenditure under 11(c) because major medical equipment has a separate $400,000 expenditure minimum. Alternatively, if the cost of the equipment must be included, SSM contends it should be the $56,750 figure that St. Mary's paid to acquire the equipment in

**2.** There is no suggestion that the value of the lease should be included as a capital expense. The parties stipulated that the lease agreement is an operating lease, rather than a capital lease. Under generally accepted accounting principles, an operating lease is not a capital expense.

1988. For the reasons stated in our discussion of 11(b), we agree that if the medical equipment should be included as a capital expenditure, it would be the 1988 cost of $56,750 rather than the original price paid in 1980. Without deciding whether the equipment should be included, we conclude that even if it were, the total amount expended ($56,750 plus $417,889.72) would not exceed the $600,000 capital expenditures minimum. Therefore, the trial court erred in finding that the capital expenditure minimum of 11(c) was exceeded.

### C.

 Subsection 11(f) applies to health services that are offered in a health care facility but that were not offered in the facility on a regular basis within the last twelve months. The radiation therapy service, itself, is not a "health care facility," and consequently, 11(f) applies only if the radiation therapy service is "in" St. Mary's.

According to the Committee, because the radiation therapy service is in close proximity to St. Mary's, is connected by a road to St. Mary's, and is operated by St. Mary's, it is necessarily "in" St. Mary's. To find otherwise, the Committee argues, would be to allow St. Mary's to circumvent the reviewability process by simply locating the new service outside of the main building(s) of the existing facility in an adjacent location.

As we read it, the language of 11(f) is unambiguous. The word "in" does not mean "next to" or "in close proximity to" a "health care facility." Conceivably, a health service could be "in" a "health care facility" even if it were not in the main building of the hospital but on some other part of the hospital campus. However, that situation is not present here as the Committee does not even suggest that the radiation therapy service is part of the St. Mary's campus. Given that the radiation therapy service is not on St. Mary's campus and is, in fact, on premises owned solely by an outside entity, the trial court erred in finding that the radiation therapy center was "in" St. Mary's.

### III.

We hold that the trial court erred in concluding that the radiation therapy service is a "new institutional health service" under § 197.305(11)(a), (b), (c), and (f). We further hold that the Committee lacks jurisdiction over the radiation therapy service. Therefore, the trial court's judgment in favor of the Committee is reversed.

All concur.